[No. B056181. Second Dist., Div. Three. Sept. 15, 1992.]

PATRICK MEDIA GROUP, INC., Plaintiff and Respondent, v. CALIFORNIA COASTAL COMMISSION, Defendant and Appellant.

594

## Counsel

Daniel E. Lungren, Attorney General, Roderick Walston, Chief Assistant Attorney General, Richard M. Frank, Acting Assistant Attorney General,

Dennis Eagan, Nancy K. Chiu and J. Matthew Rodriquez, Deputy Attorneys General, for Defendant and Appellant.

Stall & Hamlin, Marine Christine Cody and Richard F. Hamlin, for Plaintiff and Respondent.

Ronald W. Beals and Gideon Kanner as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**CROSKEY, J.**—The California Coastal Commission (the Commission) appeals from a judgment entered against it and in favor of Patrick Media Group, Inc. (PMG), adjudging PMG entitled to compensation under Business and Professions Code sections 5412 and 5412.6[1] for the compelled removal of three off-site advertising structures belonging to PMG, as a condition of a coastal development permit issued by the Commission to PMG's lessor, Solana Beach Innsuites Joint Venture (Solana). The trial court found, on PMG's motion for summary adjudication of issues, that the Commission was liable for compensation. The parties then stipulated to the amount of damages payable by the Commission if the trial court's finding of liability were to be affirmed on appeal, and judgment was entered as provided in the stipulation.

We determine that the trial court correctly found the provisions of sections 5412 and 5412.6 applicable to the Commission's actions respecting PMG's

[1]Unless otherwise indicated, all code references are to the Business and Professions Code.

Sections 5412 and 5412.6 are in chapter 2, consisting of sections 5200 through 5499.16 of division 3 of the Business and Professions Code. The chapter is cited as the Outdoor Advertising Act (§ 5200) and will be referred to as such hereafter.

Section 5412 provides in pertinent part as follows: "Notwithstanding any other provision of this chapter, no advertising display which was lawfully erected anywhere within this state shall be compelled to be removed, nor shall its customary maintenance or use be limited, whether or not the removal or limitation is pursuant to or because of this chapter or any other law, ordinance, or regulation of any governmental entity, without payment of compensation, as defined in the Eminent Domain Law (Title 7 [commencing with section 1230.010] of Part 3 of the Code of Civil Procedure), except as provided in Sections 5412.1, 5412.2, and 5412.3. The compensation shall be paid to the owner or owners of the advertising display and the owner or owners of the land upon which the display is located."

Section 5412.6 provides as follows: "The requirement by a governmental entity that a lawfully erected display be removed as a condition or prerequisite for the issuance or continued effectiveness of a permit, license, or other approval for any use, structure, development, or activity other than a display constitutes a compelled removal requiring compensation under section 5412, unless the permit, license, or approval is requested for the construction of a building or structure which cannot be built without physically removing the display."

advertising structures. However, we shall conclude that PMG's required remedy under those statutes was by way of administrative mandamus, as provided in Public Resources Code section 30801 and Code of Civil Procedure section 1094.5.[2]

As PMG failed to avail itself of this remedy, it was barred from bringing the action below. We thus will reverse the judgment with directions that PMG's action be dismissed.

FACTUAL AND PROCEDURAL BACKGROUND

In April of 1978, PMG's predecessor in interest, Foster & Kleiser Outdoor Advertising (Foster & Kleiser), entered into a lease with Solana's predecessor, Solana Beach Properties, by which Foster & Kleiser was granted the right to maintain three outdoor advertising structures on Solana's property. The lease had an original term of seven years, but contained a provision for automatic year-to-year renewals after the original seven years, subject to termination upon written notice by either party not less than sixty days before the end of the original term or the current year. In addition, the lessor had the express right under the lease's terms to terminate the lease upon 60 days' written notice at any time if a building was to be constructed on the property.

At some time prior to December of 1985, Solana applied to the Commission for a coastal development permit for the construction of a 171-unit hotel with meeting rooms, a restaurant and bar, and a swimming pool on approximately 3.4 acres of a 24-acre site on the east side of Old Highway 101 in the community of Solana Beach, California. The Commission took initial action on Solana's application on December 19, 1985. As initially approved, the permit was to be issued on multiple conditions, including the condition that all off-site signs, including Foster & Kleiser's three advertising structures, be removed from the property *prior to the commencement of construction.*

On January 1, 1986, section 5412.6, providing that compensation must be paid when a governmental entity requires the removal of an advertising display as a condition for issuance of a permit, went into effect. On March 11, 1986, the Commission gave final approval to Solana's permit with all its

---

[2]Section 30801 is in division 20 of the Public Resources Code, which is known as the California Coastal Act. (§ 30000.) Hereafter, division 20 will be referred to as "the Coastal Act." See footnote 9, *post*, for the full text of section 30801.

terms and conditions, including the condition that Foster & Kleiser's advertising structures be removed.[3]

It appears that Foster & Kleiser was not given advance notice of either the December 19, 1985 hearing at which Solana's permit was tentatively approved or the March 11, 1986, hearing at which final approval was granted. Instead, Solana merely notified Foster & Kleiser in writing on April 1, 1986, that it was terminating Foster & Kleiser's lease, and requested that the advertising structures be removed by May 1, 1986.

On April 22, 1986, Foster & Kleiser wrote to the Commission. In its certified letter, Foster & Kleiser apprised the Commission of the provisions of section 5412.6 and demanded compensation under the statute in the amount of $34,514, on grounds that the Commission's actions had forced Solana to terminate its lease. On April 28, 1986, the Commission responded to Foster & Kleiser's letter, confirming that removal of the advertising structures was a requirement of the permit issued to Solana and stating that Foster & Kleiser would have to discuss the issue of compensation with Solana.

Foster & Kleiser removed its advertising structures from the Solana property on May 23, 1986. On July 22, 1986, Foster & Kleiser presented to the Commission a formal claim for compensation. The Commission responded on August 11, 1986, advising that, pursuant to Government Code section 910 and following, a claim was required to be filed with the State Board of Control, and giving the address where such a claim should be filed. On August 25, 1986, Foster & Kleiser filed with the State Board of Control a formal claim for compensation under section 5412.6. Shortly thereafter, in September of 1986, Foster & Kleiser's assets and liabilities were conveyed to PMG.[4] On October 8, 1986, the Board of Control rejected Foster & Kleiser's claim for compensation under section 5412.6. A notice of the rejection, as provided in section 913 of the Government Code was mailed to

---

[3]The Commission contends the permit was approved in December of 1985, and on that basis argues that the Commission had no obligation to pay compensation pursuant to the statute, since the statute did not become effective until January 1, 1986. (Cal. Const., art. IV, § 8, subd. (c).) However, the issue of whether the permit was issued before or after the effective date of section 5412.6 was raised in the trial court and we presume the trial court considered it and determined that the permit issued in 1986. (*County of Santa Clara* v. *Superior Court* (1971) 4 Cal.3d 545, 553 [94 Cal.Rptr. 158, 483 P.2d 774].) As we note below, this implied finding of fact by the trial court is supported by substantial evidence, and we are bound by it. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].)

[4]As a result of the transfer, PMG stands in Foster & Kleiser's shoes in all respects relating to this action. Thus, to avoid confusion both entities will hereafter be referred to as "PMG."

PMG's attorney on October 14, 1986. PMG filed its complaint for compensation under section 5412.6 on February 24, 1987.

Upon PMG's motion for summary adjudication of issues, the trial court found as a matter of law that PMG was entitled to compensation from the Commission under sections 5412 and 5412.6.

CONTENTIONS ON APPEAL

The Commission contends that PMG was not entitled to compensation under sections 5412 and 5412.6, because: (1) Solana's permit, including the condition for removal of PMG's advertising displays, was issued before the effective date of section 5412.6; (2) the project for which the permit was issued fell within an exception to section 5412.6 for projects "for the construction of a building or structure which cannot be built without physically removing the display"; (3) sections 5412 and 5412.6 do not apply to actions of the Commission; (4) the Commission is immune from the provisions of sections 5412 and 5412.6 pursuant to Government Code section 818.4; and (5) the removal of PMG's advertising displays was not compelled by the Commission's action, but by Solana's exercise of its right under PMG's lease to terminate the lease whenever a building was to be erected on the subject property.

In the alternative, the Commission contends that PMG waived any rights it may have had to compensation under sections 5412 and 5412.6 by failing to challenge the order to remove advertising displays by means of a petition for a writ of administrative mandamus, as required by Public Resources Code section 30801 and Code of Civil Procedure section 1094.5.

DISCUSSION

1. *Sections 5412 and 5412.6 Apply to Actions by the Coastal Commission.*

 There is no merit in the Commission's arguments that the provisions of sections 5412 and 5412.6 do not apply to it. Acting under its mandate of protecting, maintaining, enhancing, and restoring the overall quality of the coastal zone environment (Pub. Resources Code, § 30001.5),[5] the Commission ordered PMG's lessor, Solana, to remove PMG's advertising displays from Solana's property as a condition for issuance of a permit to

---

[5]Public Resources Code section 30001.5 provides as follows: "The Legislature further finds and declares that the basic goals of the state for the coastal zone are to:

build a hotel on a portion of the property. This was plainly the kind of order that falls within the purview of section 5412.6, which provides that an order to remove an advertising display as a condition for issuance of a permit constitutes a "compelled removal" and requires compensation as provided in section 5412.

The Commission argues, however, that sections 5412 and 5412.6 do not apply to it, because there are no specific references to the Commission either in those sections or in the Outdoor Advertising Act as a whole. This argument is unavailing. By their terms, sections 5412 and 5412.6 apply to the laws, ordinances, and regulations of "any governmental entity." (§ 5412, 1st par.) Specific references elsewhere in the Act to other governmental entities such as the Department of Transportation and local governments (see, e.g., §§ 5209, 5230, 5250) do not, as the Commission contends, establish that the entire act applies only to those entities, but rather make clear that the Legislature knew how to limit particular provisions of the act to particular agencies when it wanted to do so. Where broader language is used, a broader application was, inferrably, intended.[6]

---

"(a) Protect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources.

"(b) Assure orderly, balanced utilization and conservation of coastal zone resources taking into account the social and economic needs of the people of the state.

"(c) Maximize public access to and along the coast and maximize public recreational opportunities in the coastal zone consistent with sound resources conservation principles and constitutionally protected rights of private property owners.

"(d) Assure priority for coastal-dependent and coastal-related development over other development on the coast.

"(e) Encourage state and local initiatives and cooperation in preparing procedures to implement coordinated planning and development for mutually beneficial uses, including educational uses, in the coastal zone."

[6]Nor, contrary to an argument of the Commission, does the legislative history of section 5412.6 support a conclusion that the section applies only to the Department of Transportation and to local governments, albeit that documents distributed to the legislators in support of the statute's enactment indicate a significant factor motivating its introduction was the circumstance that local governments were attempting to circumvent section 5412 by compelling billboard removals through the exercise of their permit authority, rather than by "law, ordinance, or regulation." (§ 5412.) See, e.g., Department of Transportation legislative analysis, dated April 3, 1985, of Assembly Bill No. 943, which became section 5412.6 ("This bill would prevent local governments from using development permits or licenses as the vehicle to order the removal of outdoor advertising displays. Such action would be defined as a compelled removal requiring compensation. ¶ Information we have indicates that some local entities have required the removal or relocation of outdoor advertising displays on portions of a parcel of property separate and apart from the portion being improved, as a prerequisite for the improvement permit.") It does not follow from the circumstance that local governments' actions motivated enactment of section 5412.6 that *only* local governments are covered by its provisions.

■ It is axiomatic that when a statute's language is clear, its plain meaning should be followed. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) Only when application of the statute's plain meaning would frustrate the manifest purpose of the legislation as a whole or would lead to absurd results is the plain meaning disregarded. (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1098 [282 Cal.Rptr. 841, 811 P.2d 1025].) The manifest purpose of section 5412.6—assuring that the owners of advertising displays receive just compensation when displays are ordered removed for public purposes—is hardly frustrated by applying the statute to the Commission. Nor would an absurd result follow from applying section 5412.6 to the Commission. To the contrary, it would be absurd if a billboard owner's legislatively declared right to compensation were subject to an exception when the taking is effected by the Commission, rather than another governmental entity.

It would be equally absurd if, as the Commission argues, a billboard owner's right to compensation under sections 5412 and 5412.6 were to be defeated by the circumstance that the Commission is without authority to institute eminent domain proceedings, the means provided in section 5414 for compelling billboard removals and for determining the required compensation. ■ It is well established that a government agency's lack of authority to initiate eminent domain proceedings cannot deprive citizens of the constitutional right to just compensation when property is taken for public use by other means. (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 866-867 [218 Cal.Rptr. 293, 705 P.2d 866]; *Marshall* v. *Department of Water & Power* (1990) 219 Cal.App.3d 1124, 1139 [268 Cal.Rptr. 559].) Under any fair and reasonable view of things, the same reasoning must apply where an agency without eminent domain authority compels the removal of a billboard, and the billboard owner seeks compensation under sections 5412 and 5412.6. Where government impairs the property rights of a citizen under circumstances giving rise to a right to compensation, and the acting government agency either does not or cannot formally exercise the power of eminent domain, principles of due process and fundamental fairness require that the citizen have a cause of action against the government in inverse condemnation to recover the value of the property right which has been impaired. (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d at p. 866.)[7]

■ Neither the Commission nor any other governmental agency is shielded by section 818.4 of the Government Code from an action in inverse

---

[7]For reasons it does not explain, the Commission vehemently insists the right to compensation for a billboard removal order under sections 5412 and 5412.6 is purely statutory and is not grounded in the federal or California Constitution. The question of whether the clear

condemnation. That section shields government from tort liability for ordinary injuries caused by the issuance of a permit. (Gov. Code, § 818.4; *Land Waste Management v. Contra Costa County Bd. of Supervisors* (1990) 222 Cal.App.3d 950, 962-963 [271 Cal.Rptr. 909]; *Walter H. Leimert Co. v. California Coastal Com.* (1983) 149 Cal.App.3d 222, 234 [196 Cal.Rptr. 739].) The citizen's right to compensation for the compelled removal of a billboard is not grounded in tort principles and is thus unaffected by section 818.4. ▉ Our conclusion that a government agency's obligation to pay just compensation under sections 5412 and 5412.6 overrides an agency's tort immunity under section 818.4 is also supported by the rule of statutory construction that a later, more specific statute controls over an earlier, general statute. (*Woods v. Young* (1991) 53 Cal.3d 315, 324 [279 Cal.Rptr. 613, 807 P.2d 455].) Sections 5412 and 5412.6 were enacted in 1982 and 1985 respectively (West's Ann. Bus. & Prof. Code, §§ 5412 at p. 117, & 5412.6 at p. 121 [Deering's Ann. Bus. & Prof. Code, §§ 5412 at pp. 119-120, 5412.6 (1992 pocket supp.) at p. 40]), as parts of an overall scheme to regulate advertising displays adjacent to highways for multiple purposes, including promoting public safety and preserving scenic beauty, while recognizing that outdoor advertising is a legitimate and integral component of the national economy with a right to exist, subject to reasonable controls. (Bus. & Prof. Code, § 5226.) Section 818.4, a more general provision, was enacted in 1963. (West's Ann. Gov. Code, § 818.4 at p. 214 [Deering's Ann. Gov. Code, § 81804 at pp. 167-168].)

Finally, Public Resources Code section 30010 expressly provides that it is the intent of the Legislature that neither the Commission nor any other agency acting pursuant to the Coastal Act may exercise its power to grant or deny a permit in a manner which will take or damage private property for public use, without paying compensation.[8] ▉ Read in conjunction with section 5412.6, Public Resources Code section 30010 is open to no other interpretation than that the Legislature intended for compensation to be paid if the Coastal Commission attaches a billboard removal condition to a coastal permit.

We conclude, as we clearly must, that sections 5412 and 5412.6 apply to the Commission.

---

statutory right is or is not constitutionally compelled is a question we need not reach. (*Hurd v. Hodge* (1948) 334 U.S. 24, 30 [92 L.Ed. 1187, 1192-1193, 68 S.Ct. 847]; *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65 [195 P.2d 1].)

[8]Public Resources Code section 30010 provides as follows: "The Legislature hereby finds and declares that this division is not intended, and shall not be construed as authorizing the commission, port governing body, or local government acting pursuant to this division to exercise their power to grant or deny a permit in a manner which will take or damage private property for public use, without the payment of just compensation therefor. This section is not intended to increase or decrease the rights of any owner of property under the Constitution of the State of California or the United States."

*2. The Several Technical Grounds Asserted by the Commission Will Not Prevent Imposition of Liability Under Section 5412.6.*

The Commission contends the permit was approved in December of 1985, a date before section 5412.6 became effective, and that for this reason the Commission had no obligation to pay compensation pursuant to the statute. Section 5412.6 was enacted in July of 1985. (Stats. 1985, ch. 439, § 1, p. 1713.) It thus became effective on January 1, 1986. (Cal. Const., art. IV, § 8, subd. (c).) The record is ambiguous as to the date of approval of the Solana permit. At the bottom of page one of the permit, December 19, 1985, the date on which the Commission originally voted to approve the permit, is designated as the "date of Commission action." At the top of the same page, however, there appears the stamped directive, "See subsequent page for Commission action." On page 15, the last page of the permit, March 11, 1986, is stamped in a space marked, "Commission Action On _____." The action indicated is "approved with changes."

The issue of whether the permit was issued before or after the effective date of section 5412.6 was raised in the trial court. We will therefore presume the trial court considered the question and determined that the permit issued in 1986. (*County of Santa Clara* v. *Superior Court* (1971) 4 Cal.3d 545, 553 [94 Cal.Rptr. 158, 483 P.2d 774].) This implied finding of fact by the trial court is supported by substantial evidence, and we are bound by it. (*Nestle* v. *City of Santa Monica, supra,* 6 Cal.3d 920, 925.)

The Commission next argues that section 5412.6 did not require a payment of compensation to PMG, because section 5412.6 does not apply to a permit "for the construction of a building or structure which cannot be built without physically removing the display" (§ 5412.6), and the project for which the Solana permit was issued could not be built without physically removing PMG's billboards. The argument is without merit. The contention that Solana's project could not be built without removing the billboards is based upon the circumstance that the project was for a hotel oriented toward an ocean view, which would have been blocked by PMG's billboards. While an obstructed view of the ocean might well interfere with Solana's intended *use* of the hotel once completed, it is not contended that the hotel literally *could not be built* without removing the billboards. We can see no reason to construe the exception to section 5412.6 for projects which "cannot be built" without removing an advertising display more broadly than the statute's plain language requires.

The Commission finally contends that the permit condition did not "compel" removal of the signs, because the removal was occasioned by Solana's

independent exercise of a provision in PMG's lease which allowed Solana to terminate the lease upon 60 days' notice if a structure were to be built on the property. PMG contends it is entitled to compensation regardless of whether Solana would have exercised the lease provision in the absence of the permit condition.

In our view, the question of whether Solana would or would not have exercised the termination provision in PMG's lease, had the permit condition not been imposed, is a factual question that is relevant, indeed essential, to a determination of PMG's entitlement to compensation. However, we need not reach the issue of the significance of the lease provision because, as we discuss below, we find that the PMG's action was barred by res judicata. By failing to raise its entitlement to compensation under sections 5412 and 5412.6 in the proper forum, PMG lost the right to litigate the issue of whether the removal of its billboards was "compelled" within the meaning of section 5412.

3. *The Appropriate Procedure for Asserting PMG's Claim Against the Commission Was Administrative Mandamus, Joined or Followed by an Action for Inverse Condemnation.*

The Commission correctly contends that the appropriate procedure for PMG to use in asserting its claim for compensation under section 5412.6 for a taking ordered by the Commission was to proceed initially by way of administrative mandamus, and that PMG's failure to utilize that procedure within the appropriate time limits barred it from asserting the claim in this collateral action. (Pub. Resources Code, § 30801; Code Civ. Proc., § 1094.5; *State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 248 [115 Cal.Rptr. 497, 524 P.2d 1281]; *Rossco Holdings, Inc.* v. *State of California* (1989) 212 Cal.App.3d 642, 660 [260 Cal.Rptr. 736] [hereafter, *Rossco*]; *Walter H. Leimert Co.* v. *California Coastal Com., supra* 149 Cal.App.3d 222, 230, 233.) PMG contends it was not required to seek its remedy by way of administrative mandamus, because it did not own the land affected by the permit condition requiring sign removal, and because it did not contest the validity of the condition, but only sought compensation for the taking occasioned by it. Neither the controlling statutory and judicial authorities nor the principles of public policy underlying them support this contention.

The procedure to be used in any particular case to compel the removal of advertising displays and to determine the compensation to be paid, as prescribed in section 5414, is that of the Eminent Domain Law, title 7 of part

3 of the Code of Civil Procedure, commencing with section 1230.010. (§ 5414.) The Eminent Domain Law establishes elaborate procedures for direct condemnation proceedings, but is generally silent regarding procedures in inverse condemnation. ■ Inverse condemnation procedure is thus covered by the general procedural rules governing eminent domain proceedings when such rules are applicable (*Highland Realty Co.* v. *City of San Rafael* (1956) 46 Cal.2d 669, 683 [298 P.2d 15]; *Aetna Life & Casualty Co.* v. *City of Los Angeles* (1985) 170 Cal.App.3d 865, 877 [216 Cal.Rptr. 831]; see generally, 8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 1060, at p. 631), and elsewhere, by the residual language of the relevant section of the Eminent Domain Law. (Code Civ. Proc., § 1230.040.) That section provides that "[e]xcept as provided in this title, the rules of practice that govern civil actions generally are the rules of practice for eminent domain proceedings."

Generally, an inverse condemnation action that is based upon "damage" to property must be filed within three years of discovery of the damage. (Code Civ. Proc., § 338, subd. (j).) Actions based upon a "taking" of property generally must be filed within five years of the taking. (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d at p. 867. See generally, 8 Witkin, Summary, *supra,* Constitutional Law, § 1060 et seq.; Condemnation Practice in California (Cont.Ed.Bar Supp. 1990) p. 247.) No administrative claim, as is required by Government Code section 900, and following, for most categories of claims against the government, is required prior to filing an action for inverse condemnation. (Gov. Code, § 905.1.)

■ Special procedural requirements apply where an inverse condemnation action is based upon a regulatory taking accomplished by a discretionary action of an administrative agency. In such cases, the proper procedure is to bring the inverse condemnation action in conjunction with, or after, a petition for administrative mandamus, as defined in section 1094.5 of the Code of Civil Procedure, the procedure generally required when the validity or propriety of an action or determination by an administrative agency is challenged. (*State of California* v. *Superior Court, supra,* 12 Cal.3d at p. 248; *City of Santee* v. *Superior Court* (1991) 228 Cal.App.3d 713, 718 [279 Cal.Rptr. 22]; *Rossco, supra,* 212 Cal.App.3d at p. 657. See generally, Condemnation Practice in California (Cont.Ed.Bar Supp. 1990) pp. 299-305.)

Where, as here, the Commission is the administrative agency whose action is challenged, the writ petition must be filed within 60 days after the Commission's decision or action has become final, rather than within the

90 days allowed for seeking judicial review of administrative decisions generally. (Pub. Resources Code, § 30801; *Walter H. Leimert Co.* v. *California Coastal Com.*, *supra*, 149 Cal.App.3d at p. 233. Cf. Code Civ. Proc., § 1094.6, subd. (b).)[9] Failure to obtain judicial review of a discretionary administrative action by a petition for a writ of administrative mandate renders the administrative action immune from collateral attack, either by inverse condemnation action or by any other action. (*Rossco*, *supra*, 212 Cal.App.3d at p. 660. See also *City of Santee* v. *Superior Court*, *supra*, 228 Cal.App.3d 713, 718-719.)

■■■ Contrary to PMG's contention, the general rule requiring a challenge to an administrative action to be raised by way of administrative mandate applies whether (1) the challenger's claim is that the action was invalid and should be cancelled (*State of California* v. *Superior Court*, *supra*, 12 Cal.3d at p. 248; *Walter H. Leimert Co.* v. *California Coastal Com.*, *supra*, 149 Cal.App.3d at pp. 230-231), or (2) the claim is that the action resulted in a taking of property from the challenger for public use and should be modified to provide for compensation (*Rossco*, *supra*, 212 Cal.App.3d at pp. 646, 656; *California Coastal Com.* v. *Superior Court* (1989) 210 Cal.App.3d 1488, 1496 [258 Cal.Rptr. 567]). In either case, the essential underpinning of the challenge is the invalidity of the administrative action. The gravamen of a challenge based upon inverse condemnation is that the administrative action was invalid *insofar as it did not provide for payment of compensation.* (*Rossco*, *supra*, 212 Cal.App.3d at p. 660.)

PMG's argument that it was not required to proceed by way of administrative mandamus because it was not contesting the validity of the permit condition, but rather, was seeking compensation for it, is substantially similar to the argument of the plaintiff in *Rossco*, *supra*. The plaintiffs in *Rossco* filed an action claiming, among other relief, inverse condemnation damages for a "taking" that was allegedly occasioned by conditions imposed by the Commission upon the development of property owned by the plaintiffs. The trial court sustained a demurrer to the action partly on the ground

[9]Public Resources Code section 30801 provides as follows: "Any aggrieved person shall have a right to judicial review of any decision or action of the commission by filing a petition for a writ of mandate in accordance with Section 1094.5 of the Code of Civil Procedure, within 60 days after the decision or action has become final.

"For purposes of this section and subdivision (c) of Section 30513 and Section 30625, an 'aggrieved person' means any person who, in person or through a representative, appeared at a public hearing of the commission, local government, or port governing body in connection with the decision or action appealed, or who, by other appropriate means prior to a hearing, informed the commission, local government, or port governing body of the nature of his concerns or who for good cause was unable to do either. 'Aggrieved person' includes the applicant for a permit and, in the case of an approval of a local coastal program, the local government involved."

that the plaintiffs had failed to comply with Code of Civil Procedure section 1094.5 prior to, or in conjunction with, their inverse condemnation claim. (212 Cal.App.3d at p. 646.) Relying upon the United States Supreme Court's decision in *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles* (1987) 482 U.S. 304 [96 L.Ed.2d 250, 107 S.Ct. 2378], the plaintiffs argued that their right to sue in inverse condemnation derived from the Fifth Amendment of the United States Constitution and thus could not be restricted or restrained by a state rule requiring it first to invalidate the conditions imposed by the Commission on their property. (*Rossco, supra,* 212 Cal.App.3d at p. 656.)

We rejected that argument. We held that *First English* only declared that *a right to compensation existed* under the circumstances at issue therein, that is, where a taking was temporary. *First English* did not address the *procedural means* by which a claim for such compensation is asserted. "Thus," we concluded, "although the state can no longer insulate itself from payment of damages for a temporary taking, it does not follow that landowners no longer need to comply with the procedural steps required to contest the action of the administrative agency." (212 Cal.App.3d at p. 656; cf. *California Coastal Com.* v. *Superior Court, supra,* 210 Cal.App.3d at pp. 1495-1496.)

Similarly, although sections 5412 and 5412.6 plainly declare that a right to compensation exists when government compels the removal of billboards, it does not follow that the owners of removed billboards are excused from established procedural requirements for asserting their claims for compensation. Indeed, the history of section 5414, the plain language of the statute, and the policies underlying the requirement that the discretionary actions of administrative agencies be challenged by administrative mandamus all indicate the very opposite is the case.

As originally enacted, section 5414 provided for special procedures to be utilized by a person entitled to compensation under sections 5412 and following, to compel such compensation to be paid. Under those procedures, if a party entitled to compensation was unable to negotiate satisfactory compensation with an agency compelling removal of a billboard within 120 days after filing a claim, such party could file a complaint in the superior court within one year of the filing of the claim. (See Stats. 1970, ch. 991, § 2, p. 1777.)

In 1980, section 5414 was amended to delete the special procedures. (Stats. 1980, ch. 1278, § 5, p. 4323.) It now provides only that compensation for compelled removals is to be determined under the Eminent Domain Law.

(§ 5414.) It thus reasonably follows that the Legislature intends that actions by billboard owners for compensation under sections 5412 and 5412.6 are to be governed by the statutory and judicially established procedural requirements that govern inverse condemnation actions generally. The one notable difference, of course, is that the trial court in an action under sections 5412 and 5412.6 need not make the determination that is a threshold determination in the usual inverse condemnation action—the determination of whether there has been a compensable "taking," or whether the challenged governmental action was a legitimate exercise of the police power, not requiring compensation. In actions under section 5412 and 5412.6, the "taking" issue is conclusively determined by the statutes.

PMG and amicus curiae argue that we must reconsider our conclusion in *Rossco* that an inverse condemnation action based upon an administrative decision must be preceded or joined by an administrative mandate action, in view of the decision of the United States Supreme Court in *Preseault* v. *Interstate Commerce Commission* (1990) 494 U.S. 1 [108 L.Ed.2d 1, 110 S.Ct. 914] (*Preseault*). We cannot agree that *Preseault* calls our conclusion in *Rossco* into question. To the contrary, in our view, *Preseault* confirms that holding.

In *Preseault*, the owners of land adjacent to a railroad right-of-way brought a quiet title action in state court, alleging that the right-of-way had been abandoned and claiming a reversionary interest in it. In their quiet title action, the landowners challenged the constitutionality of section 8(d) of the National Trails System Act Amendments of 1983 (16 U.S.C. § 1247(d)), which provided that a railroad wishing to cease operations on a particular route, rather than abandon its right-of-way, could negotiate with a governmental entity or private group to have the latter assume financial and managerial responsibility for the right of way during its interim use as a recreational trail. (494 U.S. at pp. 8-10 [108 L.Ed.2d at pp. 11-13].)

The United States Supreme Court held in *Preseault* that the issue of whether the "rails-to-trails" statute effected a taking of the landowners' property was not ripe for consideration, as the landowners had not availed themselves of the statutory remedy provided for the assertion of claims for compensation for the taking of private property, namely, the Tucker Act (28 U.S.C. § 1491(a)(1)), which provides that an action may be brought in the Court of Claims for claims against the United States founded upon the Constitution, the laws or regulations of the United States, or any express or implied contract with the United States. (494 U.S. at pp. 12, 17 [108 L.Ed.2d at pp. 14, 17].) The Supreme Court ruled, as it had ruled in the past,

that if government has provided "an adequate process for obtaining compensation" for a governmental taking, and a property owner who claims there has been a taking has not utilized that procedure, a "taking" claim asserted by another means is premature. (*Id.* at p. 11 [108 L.Ed.2d at pp. 13-14]; *Williamson Planning Comm'n* v. *Hamilton Bank* (1985) 473 U.S. 172, 194-196 [87 L.Ed.2d 126, 143-145, 105 S.Ct. 3108]. See also *Ruckelshaus* v. *Monsanto Co.* (1984) 467 U.S. 986, 1016 [81 L.Ed.2d 815, 841, 104 S.Ct. 2862]; *Acacia Villa* v. *Kemp* (C.D.Cal. 1990) 774 F.Supp. 1240, 1245.)

The procedure outlined in *Rossco* for the assertion of "takings" claims under the Fifth Amendment, which we now find to apply to the assertion of claims under sections 5412 and 5412.6, is fair and adequate for the assertion of such claims where the claims result from discretionary actions of administrative agencies. The procedure accommodates both the citizen's right to just compensation for property rights taken or impaired and important governmental interests in the prompt adjudication of such claims.

■■ The United States Supreme Court made plain in *First English, supra,* that a property owner cannot be *limited* to the remedy of invalidation of a regulatory taking. (482 U.S. at p. 322 [96 L.Ed.2d at pp. 268-269].) It does not follow, however, that the property owner can *require* the government to exercise its power of eminent domain, instead of merely cancelling or modifying a confiscatory regulation and compensating the property owner for any taking which occurred before the cancellation or modification. The Supreme Court emphasized in *First English* that "the decision to exercise the power of eminent domain is a legislative function . . . . Once a court determines that a taking has occurred, the government retains the whole range of options already available—amendment of the regulation, withdrawal of the invalidated regulation, or exercise of eminent domain. Thus we do not, as the Solicitor General suggests, 'permit a court, at the behest of a private person, to require the . . . Government to exercise the power of eminent domain . . .' [Citation.] We merely hold that where the government's activities have already worked a taking . . . no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." (*Id.* at p. 321 [96 L.Ed.2d at pp. 267-268].)

Important policy concerns underlie the requirement that inverse condemnation claims arising out of administrative actions, as well as other challenges to administrative actions, be raised initially by way of administrative mandamus. A public agency's capacity to plan its actions in the public interest and to make reasonable and responsible allocations of resources that

it holds in trust for the public requires that the agency be alerted promptly both when its decisions are questioned, and when, as a result of a particular decision, the agency may be liable for inverse condemnation damages. If an agency operating with limited resources may be liable for inverse condemnation damages as a result of a particular decision, the agency must be afforded an opportunity to change or stay enforcement of the challenged action, remove or modify a challenged condition, or take other action to mitigate the claimed damages if it determines enforcement of its order does not merit the compensation required to be paid. Here, for example, if ordered by the superior court to either cancel the sign removal condition attached to Solana's coastal development permit or pay compensation to PMG, the Commission might have chosen to cancel the condition and leave Solana to exercise, or not exercise, its rights under PMG's lease at a time best suited to Solana's interests.

The requirement that challenges to administrative actions constituting takings be brought initially by administrative mandamus assures that the administrative agency will have the alternative of changing a decision for which compensation might be required. If no such early opportunity were given, and instead, persons were permitted to stand by in the face of administrative actions alleged to be injurious or confiscatory, and three or five years later, claim monetary compensation on the theory that the administrative action resulted in a taking for public use, meaningful governmental fiscal planning would become impossible. (Cf. *California Coastal Com.* v. *Superior Court, supra,* 210 Cal.App.3d at p. 1496; *Air Quality Products, Inc.* v. *State of California* (1979) 96 Cal.App.3d 340, 352 [157 Cal.Rptr. 791].) In addition, scarce public resources which might otherwise be put to more effective use in furtherance of an agency's mission would be dissipated at the election of private parties, not according to the deliberate determination of public officers charged with acting in the public interest.

■ The foregoing policy reasons require that not only landowners and permit applicants, but any parties aggrieved by the issuance, denial, or conditions of issuance of permits must be required to pursue the remedy of administrative mandamus before claiming compensation for permit conditions which are alleged to effect a taking. An agency's interest in prompt notice of a challenge to its decisions is, after all, equally great, whether the party raising that challenge is a landowner, a permit applicant, or any other party. (*Air Quality Products, Inc.* v. *State of California, supra,* 96 Cal.App.3d at p. 352.) Once aware of a challenge from whatever source, an agency can cancel, change, or stay enforcement of a challenged action, or otherwise mitigate damages. On the other hand, if persons affected by adverse administrative actions—be they landowners, permit applicants, or others—were

permitted to refrain from challenging such actions until mitigation of damages by the government becomes impossible through the passage of time or events, and then present monetary claims, the financial burden on government could become overwhelming. (Cf. *California Coastal Com.* v. *Superior Court, supra,* 210 Cal.App.3d at p. 1496.)

The requirement that claims for compensation for administrative takings be raised in conjunction with, or after, a petition for administrative mandamus is also dictated by considerations of judicial economy, at least where, as here, such claims could and should have been presented to the administrative agency in the course of the proceedings leading to the action alleged to have resulted in a taking. As another court explained in a slightly different context, "[T]o allow parties to circumvent the system of review provided under section 1094.5 would, in effect, undermine the authority and integrity of the hearing procedures which the administrative agencies are presently required to render. The agencies have been vested with quasi-judicial authority to hold hearings, take evidence, and render a decision based upon findings of fact. [Citations.] The right to limited review of that decision by a reviewing court has also been provided. (Code Civ. Proc., § 1094.5.) To allow the parties to challenge every administrative decision with another trial de novo would be a waste of both administrative and judicial resources, and the administrative hearings would be nothing more than perfunctory gestures." (*Eureka Teachers Assn.* v. *Board of Education* (1988) 199 Cal.App.3d 353, 366 [244 Cal.Rptr. 240].)

PMG argues, however, that it is *not* afforded an adequate means of obtaining compensation for the compelled removal of its billboards if it is forced to proceed initially by administrative mandamus. PMG contends the procedural limitations of the administrative proceedings and of judicial review by means of mandamus are inadequate for the assertion of its claims. This same contention was raised in *Rossco.* We stated in that case, "While we recognize there are evidentiary limitations inherent in the mandamus procedure, there simply is no way of knowing, based upon the present record, whether a hearing conducted in accordance with [relevant portions of] the California Code of Regulations would, or would not, have allowed Quaker adequately to present its claims. Until the longstanding statutory scheme defined by section 30801 and section 1094.5 has been tested properly, we are reluctant to find it inadequate." (*Rossco, supra,* 212 Cal.App.3d at p. 659.) Like the record in *Rossco,* the record in this case provides no basis for determining whether a mandamus proceeding would have been adequate for the assertion of PMG's claims, there having been no attempt whatever

to utilize it. We thus remain reluctant to find the untried procedure inadequate.[10]

■ The requirement that a claim based upon an administrative taking be initially raised in a mandamus action does not deprive the claimant of the right to a jury trial. Every inverse condemnation action, whether brought in connection with a mandamus action or in the "ordinary" manner, consists of a two-step process, in which the trial court first sits as the trier of law and fact to determine whether there is a right to compensation in the first instance. (*Rossco, supra,* 212 Cal.App.3d at p. 659; *Lussier* v. *San Lorenzo Valley Water District* (1988) 206 Cal.App.3d 92, 107 [253 Cal.Rptr. 470].)[11] Where an action for inverse condemnation is joined with a petition for administrative mandamus, the trial court initially determines in the mandamus action whether the administrative agency must pay compensation for property rights impinged upon by its action or rescind the action. If compensation must be paid, and the agency does not rescind the action and does not pay "just" compensation, then the citizen and the agency must proceed to a jury trial on the amount to be paid. If the claimant initially filed *only* a mandamus action, he or she has five years from the effective time of the taking to file an inverse condemnation action. (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d at p. 867.)

■ Finally, the requirement that a mandamus action be filed within 60 days of an action by the Commission, or within 90 days of the actions of administrative agencies generally, works no unfairness upon one asserting a right to compensation for the action. *United States* v. *Dickinson* (1947) 331

---

[10]As we noted in *Rossco,* the procedure of joining an action for inverse condemnation with an action for mandamus, or filing such actions successively, has been adequate in the past to prove an administrative condition either invalid or excessive. (212 Cal.App.3d at p. 658.) For example, the aggrieved property owners in *Nollan* v. *California Coastal Comm'n* (1987) 483 U.S. 825 [97 L.Ed.2d 677, 107 S.Ct. 3141] proceeded essentially in the manner outlined above. When the Commission conditioned their coastal development permit upon their granting a public access easement across their beachfront property, the Nollans initially petitioned for a writ of mandate to invalidate the condition. (483 U.S. at p. 828 [97 L.Ed.2d at pp. 687-688].) The trial court found the condition could be upheld only if supported by a finding that the Nollans' project would adversely impact public access to the beach, whereupon the Commission held a public hearing, made findings which it contended established such adverse impact, and reaffirmed the condition. (*Ibid.*) The Nollans then filed a supplemental petition for administrative mandamus, arguing that the access condition constituted a "taking" under the Fifth Amendment. (*Id.* at p. 829 [97 L.Ed.2d at p. 864].) It was through this proceeding that the Nollans ultimately succeeded in obtaining from the United States Supreme Court the ruling that the access condition constituted a taking for which compensation must be paid under the Fifth Amendment. (*Id.* at pp. 830-831, 842 [97 L.Ed.2d at pp. 864-866, 692-693].)

[11]In the particular circumstance of a claim under section 5412 or 5412.6, this determination will, of course, be perfunctory, as the right to compensation is resolved by statute.

U.S. 745 [91 L.Ed. 1789, 67 S.Ct. 1382] and *Pierpont Inn* v. *State of California* (1969) 70 Cal.2d 282 [74 Cal.Rptr. 521, 449 P.2d 737], cited by PMG and by amicus curiae, do not stand for the proposition that a short, even a very short, statute of limitations can never be required for an inverse condemnation action. Those cases merely apply, in the inverse condemnation context, well-established principles regarding the tolling of any statute of limitations, short or long, and the estoppel of a defendant to raise the statute as a defense, where the plaintiff, without fault, is unaware of a cause of action or of its extent, or where fraud or other misconduct by the defendant has caused the plaintiff's inaction. (See, e.g., *Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 97 [132 Cal.Rptr. 657, 553 P.2d 1129]; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187-188 [98 Cal.Rptr. 837, 491 P.2d 421]; *Evans* v. *Eckelman* (1990) 216 Cal.App.3d 1609, 1613-1615 [265 Cal.Rptr. 605]; *Manguso* v. *Oceanside Unified School Dist.* (1979) 88 Cal.App.3d 725, 731 [152 Cal.Rptr. 27].)

In *Pierpont* and *Dickinson*, the government physically invaded the plaintiffs' land, but failed to initiate eminent domain proceedings. The courts reasoned that the governments had knowledge that their projects would invade the plaintiffs' property and could have initiated condemnation proceedings at any time, and thereby fixed the time when the property was taken. Where the governments chose not to do so, the courts held that the property owners were justified in waiting to file actions for inverse condemnation until completion of the governments' projects—the filling of a reservoir in *Dickinson*, the completion of a freeway in *Pierpont Inn*—so the exact extent of the takings could be assessed. (*United States* v. *Dickinson, supra,* 331 U.S. 745, 749 [91 L.Ed. 1789, 1794]; *Pierpont Inn* v. *State of California, supra,* 70 Cal.2d at p. 293.)

There can be little doubt that the same principles of fairness which applied to toll the two-year statute of limitations that was applicable in *Pierpont* (70 Cal.2d at p. 286) and the six-year statute that applied in *Dickinson* (331 U.S. at p. 747 [91 L.Ed. at p. 1793]) also apply, where appropriate, to the shorter statutes of limitations applicable to actions required to be taken by administrative mandamus. ▮ We merely hold that where—as here—a claimed taking is the consequence of an order, determination, or other action of record by an administrative agency, and the existence, and substantially the full extent, of the taking are known to the claimant at a time when it remains reasonably possible for the acting government agency to rescind or modify its action rather than become liable for the payment of compensation, the claimant must comply with procedural requirements which afford the agency the opportunity of doing so.

*4. The Commission's Failure to Provide to PMG's Predecessor Advance Notice of the Hearing on Solana's Permit Application Did Not Excuse PMG From Seeking Review of the Commission's Actions by Way of Administrative Mandamus.*

■ PMG contends that it was precluded from asserting its claim against the Commission at the relevant administrative hearings, owing to the failure of the Commission to provide it with notice of the hearings. PMG contends it was consequently excused from seeking judicial review of the Commission's actions by way of administrative mandamus. We disagree.

It must be observed that the failure to provide PMG with notice of hearings that affected its leasehold interest in Solana's property constituted a violation of express statutes and regulations governing Commission proceedings. The Commission is required to hold hearings on applications for coastal development permits and to provide notice of such hearings to "any affected person." (Pub. Resources Code, § 30621.) In addition, a permit applicant is required to inform the Commission of affected parties so that the required notice may be given. (Cal. Code Regs., tit. 14, § 13054.) It does not follow, however, that the lack of advance notice to PMG of the Commission's hearings, although in violation of statutory and regulatory requirements, excused PMG from complying with important procedural rules for the review of discretionary Commission decisions. This is so, because even though *advance* notice of the hearings was not provided, PMG was not in fact precluded from presenting its claim to the Commission. Adequate posthearing procedures were available through which the claim could, and thus should, have been asserted in a timely manner.

The statutes and regulations governing the Commission provide at least two means by which an action that has been taken by the Commission may be challenged by a party who did not receive timely notice of a hearing at which the action was taken. First, under administrative regulations governing Commission proceedings, a party who did not have an opportunity to participate in a hearing by reason of inadequate notice has the right, after the hearing, to request that the Commission revoke any permit that was issued. (Cal. Code Regs., tit. 14, § 13106.) Alternatively, any party aggrieved by a Commission decision has the express right under Public Resources Code section 30801 to seek immediate judicial review of the decision by petitioning for a writ of mandate. Section 30801 defines an "aggrieved person" who is entitled to petition for mandamus as a person, presumably one damaged in a legally cognizable way, (1) who appeared at the Commission's hearing either in person or by a representative, (2) who otherwise made his or her

concerns known prior to the hearing, or (3) who for good cause was unable to do either. (Pub. Resources Code, § 30801; *Pillsbury* v. *South Coast Regional Com.* (1977) 71 Cal.App.3d 740, 750 [139 Cal.Rptr. 760].)

The foregoing posthearing procedures provide recourse for persons with legitimate grievances against Commission actions, the pendency of which had not been brought to their attention by advance notice. At the same time, by providing for prompt resolution of such grievances, accommodation is made for the public agency's need for prompt notice of challenges to its decisions, and of inverse condemnation claims which may arise as the result of a decision.

██ Under California law, res judicata applies both to claims actually litigated in a prior proceeding, and to claims which could have been litigated. (*California Coastal Com.* v. *Superior Court (Ham), supra,* 210 Cal.App.3d at p. 1499.) Here, although PMG had no advance notice of the hearing on Solana's permit application, it had the right under section 13106 of the Commission's regulations to request revocation of the permit pending resolution of its claim for compensation. (Cal. Code Regs., tit. 14, § 13106.) In addition, PMG had the right under Public Resources Code section 30801 to litigate its right to compensation by way of a petition for a writ of mandate. (Pub. Resources Code, § 30801.) Having failed to avail itself of either of these available remedies, after receiving actual notice of the Commission's action, the issue of its entitlement to compensation became res judicata upon expiration of its time to petition for the writ.

In view of the absence of notice to PMG of the Commission's hearing, its time to petition for mandamus could not be held to expire within 60 days of the Commission's final action. However, PMG had at least second-hand knowledge of the permit condition by April 22, 1986, when it wrote to the Commission by certified letter, stated that the permit condition had been brought to its attention, apprised the Commission of the provisions of sections 5412 and 5412.6, and demanded compensation under the statutes. PMG had direct and unequivocal notice both of the condition and of its full impact shortly after April 28, 1986, when the Commission confirmed by letter to PMG that its advertising structures were ordered removed as a condition of Solana's permit. The Commission also stated in the letter that compensation would have to be discussed with Solana, conveying plainly enough that the Commission did not intend to comply with section 5412.6. Allowing five days for mailing, PMG thus had notice of the effect upon it of the Commission's action by *no later than May 3, 1986.* Had an administrative mandamus action been filed within 60 days of that date, it could not in fairness have been found to be time-barred.

A mandamus action was not filed within such extended time period, nor did PMG proceed in a manner which afforded the Commission the alternative of cancelling the billboard removal condition, rather than paying compensation. PMG took no judicial action for over 60 days after May 3, 1986. Instead, on May 23, 1986, it complied with the administrative order and removed its signs, and *thereafter,* on July 22, filed a formal claim for compensation, purportedly under Government Code section 910, preparatory to this collateral proceeding. For the reasons discussed above, considerations of judicial economy and of broader public policy compel us to conclude such action was barred as res judicata.

We need not consider what the result would be if, through no fault of PMG, the required notice to it of the Commission's action were withheld until it became entirely too late for the Commission to modify the permit condition or proceed in any manner other than the payment of compensation. PMG did have notice of the permit condition in time to afford the Commission the opportunity of altering it rather than paying compensation. PMG was thus required either to act in a manner that would afford such opportunity or to forego all action.

In sum, issuance of Solana's permit was a discretionary administrative action of the Commission. The permit and its separate conditions were thus reviewable under Public Resources Code section 30801 and Code of Civil Procedure section 1094.5, which serve interests of judicial economy, as well as the need of public agencies for the prompt resolution of all categories of challenges to their actions, and for the opportunity to take alternative, mitigating action, rather then become liable for possibly prohibitive compensation requirements. PMG's available and proper action was thus either to request that the Commission revoke Solana's permit pending resolution of PMG's claim for compensation under sections 5412 and 5412.6 or to file an immediate petition for a writ of administrative mandamus, challenging the billboard removal condition as invalid if imposed without providing for compensation. As it failed to avail itself of either of these actions, PMG is barred from asserting its claim in any collateral proceeding.[12]

---

[12]Included in the Commission's August 11, 1986, letter to PMG was the advice that, pursuant to Government Code sections 910 and following, a claim was required to be filed with the State Board of Control. Included in a letter of October 8, 1986, from the State Board of Control rejecting PMG's administrative claim was the standard warning required by Government Code section 913 that the claimant would have six months from the date of delivery of the notice to file suit on the claim, pursuant to Government Code section 945.6. Had either the Commission's or the Board of Control's advisement been sent before the expiration of the time to file a petition for administrative mandamus, an issue would arise as

## DISPOSITION

The judgment is reversed with directions that PMG's action be dismissed as barred by res judicata. The Commission shall recover its costs on appeal.

Klein, P. J., and Danielson, J.,* concurred.

---

to whether the state had misled PMG into foregoing the proper remedy, and was thus estopped from objecting when the remedy seemingly recommended by the state's own notice was pursued. (*Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382, 396-397 [29 Cal.Rptr. 657, 380 P.2d 97].) Such was not the case, however. The time to file the required administrative mandamus action had expired before PMG filed either claim to which the foregoing misadvice responded.

Nor does it appear that PMG should have been misdirected by a state of the law that was admittedly not unequivocal as to the proper action to be taken. As of 1986, Public Resources Code section 30801 provided that actions of the Commission were reviewable by administrative mandate. Further, section 5414 provided that proceedings to obtain compensation under section 5412 et seq. were to be under the Eminent Domain Law, including all judicially established procedures for actions in inverse condemnation. Finally, section 905.1 of the Government Code provided that the claim procedures in Government Code sections 900 and following, the procedures PMG purported to utilize in this case, were *not* required prior to an action for inverse condemnation.

Even though it was not until 1989 that the courts in *Rossco, supra,* 212 Cal.App.3d 642 and *California Coastal* v. *Superior Court, supra,* 210 Cal.App.3d 1488 expressly applied to inverse condemnation actions the general rule that challenges to discretionary administrative actions must be raised by way of administrative mandamus, the general rule was sufficiently clear to give PMG notice of the appropriate procedure for its challenge. As was noted in both *Rossco* and *California Coastal Com.,* the decision of the California Supreme Court in *State of California* v. *Superior Court, supra,* 12 Cal.3d 237, indicated as early as 1974 that an administrative mandate action is a necessary procedural predicate to seeking inverse condemnation compensation based on a regulatory taking by an administrative agency. (12 Cal.3d at p. 248; 212 Cal.App.3d at p. 657; 210 Cal.App.3d at p. 1494.)

*Retired Associate Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.