869 F.2d 1322
 STOREK & STOREK, INC., a California corporation; Richard
Storek; Glenn Storek, individually and in their
representative capacity as general
partners of Storek & Storek,
Plaintiffs-Appellees,
v.
PORT OF OAKLAND, Defendant-Appellant.
 No. 88-1733.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 17, 1989.
Decided March 13, 1989.
 
 Cedric C. Chao, Morrison & Foerster, San Francisco, Cal., for defendant-appellant.
 Christopher J. Hunt, Keker & Brockett, San Francisco, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before SNEED and NOONAN, Circuit Judges, and WILSON, District Judge.*
 NOONAN, Jr., Circuit Judge:
 
 
 1
 Storek & Storek, Richard Storek and Glenn Storek (Storek) brought suit against the Port of Oakland (the Port). Jurisdiction existed under 42 U.S.C. Sec. 1983. The district court denied summary judgment for the Port but certified two questions for interlocutory appeal to this court. We answer both negatively to the contentions of the Storeks and direct the district court to enter judgment for the Port on its motion for summary judgment on the Storeks' first, third and fifth causes of action.
 
 BACKGROUND
 
 2
 The Storeks are real estate developers who sought to develop a portion of Jack London Square in Oakland. On September 7, 1985 the governing body of the Port met and did a variety of business. According to the board's minutes:
 
 
 3
 Storek and Storek Project--Jack London Square Site A was the subject of a memo to the Board from the Executive Director, notifying the Board that only one proposal meeting the Board's criteria of a "financially-capable owner-user developer with a demonstrated ability to immediately undertake and complete construction of an appropriate project" has been received for the development of Site A. Two other firms have expressed an interest but have not submitted a detailed proposal. Storek and Storek has been evaluated as to their ability to undertake, finance and bring the project to a successful completion, and this evaluation reasonably assures that Storek will be able to move ahead with the financing and completion of the project. As the environmental impact report for the Jack London Square development plan will not be approved until January, 1983, approval in principle of the project would not commit the Port to an irrevocable step or lease commitments before firm evidence of financing or other conditions are met by Storek. As it appears that Storek has met all of the criteria, it was recommended that the Board approve the project in principle.
 
 
 4
 A discussion followed in which conditions of the approval were laid out and in which Richard Storek declared that "based on the board's 'statement of support' his firm was prepared to spend in excess of $800,000 to prepare the project for a lending commitment, in addition to paying fees to the potential lender." Another developer appeared and asked the board to delay its approval in principle but could not provide any details of his proposed development. The executive director's recommendation was approved on motion and passed by a vote of five to one.
 
 
 5
 In the course of the next 10 months the Storeks tried to comply with the board's conditions. However, on July 5, 1983 the Executive Director informed the board that all of the conditions had not been satisfied. Richard Storek appeared before the board and stated that "in his opinion the board has set unrealistic time requirements." He asked for "more time for the completion of the board's requirements." The board, however, terminated the approval in principle and began negotiations with other developers.
 
 
 6
 On March 6, 1985 the Storeks brought this suit. The first cause of action alleged that "the Storeks held a valuable property interest in the leasing and development of Site A and that the board, in terminating the Storek's approval in principle on July 5, 1983" deprived the Storeks of their entire property and rights in Site A. This deprivation was alleged to have been an inverse condemnation in violation of the fifth and fourteenth amendment to the United States Constitution and a violation of the civil rights of the Storeks contrary to 42 U.S.C. Sec. 1983.
 
 
 7
 A second cause of action alleged that the board's action had violated the Storek's right to procedural due process. The third cause of action stated that the board, together with Oakland City employees and private individuals, had "knowingly and willingly conspired" to interfere with the prospective economic advantage the Storeks held with respect to the leasing and development of Site A. The fourth cause of action was a pendent claim for breach of contract under the statutory and common law of California. The fifth cause of action alleged a conspiracy to bring about the breach of contract set out in the fourth cause of action. This cause, too, was a pendent claim brought under California law.
 
 
 8
 The district court dismissed with prejudice the second cause of action and portions of the first cause of action. The Port moved for summary judgment on the Storeks' remaining claims. The district court denied the motion for summary judgment but certified for interlocutory appeal the following questions:
 
 
 9
 (a) whether plaintiffs have a constitutionally protected property interest; and
 
 
 10
 (b) whether plaintiffs' conspiracy claims, set forth as third and fifth causes of action in the complaint, are barred by the 100-day limitations period contained in California Government Code Section 911.2.
 
 ANALYSIS
 
 11
 The principal contention of the Storeks is an imaginative and ingenious effort to convert a preliminary step in negotiation into a form of contractual obligation and then to parlay this contractual obligation into property protected by the Constitution of the United States. Bits of stray dicta support this bold enterprise. Sober consideration of the law of contract, the law of property, the law of civil rights and the law governing public bodies leads to only one conclusion: the Storeks have no property to be protected.
 
 
 12
 The Oakland City Charter provides that "all proceedings for the acquisition of real property ... or the granting of any lease longer than one year" shall be taken by ordinance of the Port. Oakland City Charter Sec. 605. To constitute an ordinance a bill must be published at least once in the official newspaper of the City and there must be two readings of the bill with a five day period between the first and final readings. Id. Sec. 604. It is uncontestable that the board did not adopt an ordinance in approving the Storeks in principle. The Storeks concede that they do not have a lease. They argue that the approval in principle, while not a lease, is an interest in property.
 
 
 13
 Approval in principle is a common device of governmental bodies as well as of private companies and even of parents. Approval in principle is a way of saying, "Well, it looks pretty good to me; I am not completely sure. Go ahead and if all goes well you will get what you were hoping for." At the board's meeting on September 7, 1982 Richard Storek understood that this kind of commitment was what he was getting. He tried at the time to make it sound a little better by referring to it as "the Port's firm support" but, as his own term "support" indicates, he was aware that he was getting nothing more definite. When the hour of reckoning came on July 5, 1983, Richard Storek was equally aware that he had no rights by which he could keep the board from ending the approval in principle. All he could do was to urge the board to be considerate, to be reasonable.
 
 
 14
 It would be strange if it were otherwise. A public body has to be protected against rash or even corrupt actions by its governing body by provisions such as the Oakland City Charter has for actions by the board. To permit the Storeks to convert their approval in principle into property--worth as they allege $1 million--would substantially impair the legal protection that now exists against precipitate City action.
 
 
 15
 The Storeks concede in their brief that they have no name for the property interest they assert they have. It is, they say, "neither fish nor fowl," but they contend that it is still something and not nothing. There is a plain name for what the Storeks had. They had a hope. They had an expectation. They even had an expectation of good faith dealing by the Port. But under no principle of known contract law could the board's motion to accept the recommendation of its executive director be called a bilateral contract. A government agency is perfectly free to proceed with a procurement program step by step, saying, "So far it seems good to us," without thereby binding itself to the hopeful party whose proposal at the moment it looks on favorably.
 
 
 16
 As far as precedent goes in the area of civil rights, San Bernardino Physicians Services Medical Group v. County of San Bernardino, 825 F.2d 1404 (9th Cir.1987), is dispositive. There the court indicated that it was not the intent of Sec. 1983 to convert every breach of contract claim against a city into a federal claim or to shift the whole of public law of the state into the federal court or to turn into issues of federal constitution the entire state law of public contracts. Id. at 1408.
 
 
 17
 The Storeks presented their conspiracy claims in their third and fifth causes of action nearly one year after the court had terminated the approval in principle. The California Government Code Sec. 911.2, governing tort claims against public entities, provides that a claim for injury to personal property shall be presented no later than the 100th day after the accrual of the cause of action. The Storeks attempt to avoid the application of the tort statute of limitations by contending that their conspiracy claims are actually contract claims. They point to no law supporting the contention. They argue that the conspiracy claim "is premised on duty which does not exist but for the contractual promissory-based relationship between the Port and the Storeks." That the conspiracy claim is based on an allegation of extant contractual duty does not convert it into a contractual claim.
 
 
 18
 Just as conspiracy to injure property is not an assertion of a property claim, so assertion of injury to a contract does not itself sound in contract. Doleman v. Mieji Mutual Life Insurance Co., 727 F.2d 1480 at 1482 n. 3 (9th Cir.1984); Prosser & Keaton on Torts Sec. 129 (5th ed. 1984). These causes of action are unmistakably tort claims. See American Law Institute, Restatement (Second) of Torts, Sec. 766B. These causes of action are barred by their untimeliness under California Government Code Sec. 911.2.
 
 
 19
 Answering the questions certified negatively, we reverse the district court's denial of summary judgment and direct that court to enter judgment for the Port as to the Storeks' first, third, and fifth causes of action.
 
 
 20
 REVERSED.
 
 
 
 *
 Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation