[No. G014576. Fourth Dist., Div. Three. Aug. 27, 1997.]

MOLA DEVELOPMENT CORPORATION, Plaintiff and Appellant, v. CITY OF SEAL BEACH et al., Defendants and Respondents.

COUNSEL

Ronald A. Zumbrun, James S. Burling, Orrin F. Finch and Alexander Dushku for Plaintiff and Appellant.

Quinn M. Barrow, City Attorney, Richards, Watson & Gershon, Glenn R. Watson, Gregory M. Kunert and Rubin D. Weiner for Defendants and Respondents.

## OPINION

CROSBY, J.— ▮▮▮ Is the mere filing of a lawsuit for administrative mandamus the same as pursuing it to decision? Mola Development Corporation argues it is, but we disagree. Mola filed an action for administrative mandamus to overturn the City of Seal Beach's quasi-judicial decision to disapprove a vesting tentative map, but voluntarily dismissed it on the eve of trial. That dismissal precludes, we will hold, a suit for damages for a regulatory taking.

There is an obvious and fundamental distinction between initiating mandamus and obtaining a judgment. The Supreme Court tells us "[a] final administrative decision includes *exhaustion* of any available review mechanism." (*Hensler* v. *City of Glendale* (1994) 8 Cal.4th 1, 12 [32 Cal.Rptr.2d 244, 876 P.2d 1043], italics added.) By dropping mandamus, Mola allowed the administrative decision to achieve finality and issue preclusive effect. It cannot now seek damages for a regulatory taking.

We are not impressed with Mola's claim to be exempt from the mandamus requirement because its option to develop the property expired during the pendency of the mandamus action. *Hensler* itself holds that private parties cannot unilaterally shorten the time for reasonable administrative and judicial review by terminating their property interests in the subject development.

Our decision does not place developers like Mola in a "Catch-22" from which they never can extricate themselves. Mola, not Seal Beach, determined the length of its option. Nothing in the record suggests the city tried to run out the clock until the option expired. Mola did nothing to expedite the trial of the mandamus action while its option was still extant; to the contrary, the evidence shows Mola itself continued the trial to accommodate its new trial counsel until after the option ran. Mola's expired option does not justify depriving Seal Beach of the opportunity afforded by mandamus to

rescind or modify invalid development restrictions before being subjected to a claim for damages for a regulatory taking.

## I

Mola acquired an option from Hellman Properties to purchase and subdivide a portion of the Hellman Ranch, 149 acres of undeveloped real property in Seal Beach. Mola proposed to build more than 300 residential units.

The project was controversial from the start. It traversed the Inglewood-Newport earthquake fault and encompassed significant wetlands areas. There was much local opposition. Despite this, the project was initially approved in 1989 by the city council, which adopted a vesting tentative map and approved a development agreement.[1]

A citizens group sued Mola and the city. In May 1990, the superior court (Judge Bauer) invalidated the approvals, finding they were void at the outset because the city's general plan contained an obsolete housing element. The city council accepted the court's judgment and immediately adopted a new housing element. It rescinded the ordinances and resolution at issue.

A reconstituted council reconsidered the Mola project under the new general plan. On June 25, 1990, the council conducted public hearings and adopted Resolution No. 3937 by a three-to-two vote. It disapproved Mola's application for a vesting tentative map, a related specific plan amendment, and a development agreement. The council determined Mola's proposals were not in compliance with the new general plan.

The council purported to base its decision in part on the "geologic instability of the site," information gained from the Loma Prieta earthquake, which struck the San Francisco Bay area the previous October, and evidence presented by geologists and seismic consultants. It found certain portions of the site to pose such high potential for liquefaction that residences should not be constructed there without further study. The city invited Mola to work with its staff to provide for "appropriate development, including residential uses."

Mola attacked the city's decision on two fronts. On July 20, 1990, Mola appealed from the trial court's judgment invalidating its development approvals. Mola argued Judge Bauer abused his discretion in declaring the

---

[1]Approval of a vesting tentative map confers upon a developer, subject to limitations, certain vested rights to approval of a final map consistent with the vesting tentative map. (See Gov. Code, §§ 66498.1-66498.9.) The vesting tentative map statute was adopted "to offer developers 'a degree of assurance, not previously available, against changes in regulations.' " (*Golden State Homebuilding Associates* v. *City of Modesto* (1994) 26 Cal.App.4th 601, 611 [31 Cal.Rptr.2d 572].)

development approvals for the project to be void *ab initio*, thereby requiring Mola to "throw out" its nearly $11 million in expenditures and "four years of planning, processing, and public hearings, and . . . or . . . start from scratch . . . ." Mola contended Judge Bauer should not have invalidated the prior approvals, but simply suspended them during the time the city's housing element was technically out of compliance with state law.[2]

In September 1990, contending the city had "finally and conclusively acted to prohibit development," Mola petitioned for a writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5. Mola also sued the city and the three councilmembers who voted against the project for damages for civil rights violations and for inverse condemnation.

In July 1991, about ten months after the petition for writ of mandate was filed, the trial court ordered a December trial date for the writ proceedings, with the remaining causes of action to be tried later. In November Mola moved to continue the December trial for an additional 150 days because of the "normal, time-consuming pace of complex civil litigation" and because it had been forced to retain new counsel. The trial court agreed to a continuance over objection, until February 1992.

In October 1991, a different panel of this court decided Mola's appeal from Judge Bauer's order invalidating the city's original development approvals. We agreed with Judge Bauer that the development approvals were void and that the city was required "to start the process anew" upon the city's approval of a new housing element. (*Wetlands Restoration Society* v. *City of Seal Beach, supra*, G009822.)

Mola's option to acquire a portion of the Hellman Ranch expired in November 1991. According to Mola, "[o]n December 6, 1991, the true owner of the subject property terminated all of Mola's interests in the property" and refused to grant any further extensions. Mola says it thereby lost any rights to purchase or develop the property, causing it to lose the "beneficial interest" necessary to assert a claim for administrative mandamus. Mola had not previously sought to expedite the mandamus trial while it still had a viable option to purchase the property.

Despite its claim to loss of standing, on December 10, 1991, Mola petitioned for review of this court's October 31 opinion. Mola filed a reply brief in the Supreme Court on January 9, 1992. The court denied review on March 2, 1992.

---

[2]Pursuant to Evidence Code section 452, subdivision (d), we take judicial notice of the court records in Mola's appeal in *Wetlands Restoration Society* v. *City of Seal Beach* (Oct. 31, 1991) G009822 (nonpub.opn.).

On February 14, four days before the continued trial date, Mola dismissed its mandamus claim without prejudice. The record does not reveal why.

After Mola dismissed the mandamus action, defendants filed supplemental answers, pleading as a defense Mola's failure to test the city council's decision on the project by mandamus. The trial court granted defendants' motions to exclude Mola's remaining causes of action. Mola timely appealed.

## II

■ The law in this area is well summarized as follows: "A line of recent cases holds that where an administrative tribunal has rendered a quasi-judicial decision which could be challenged by administrative mandamus pursuant to Code of Civil Procedure section 1094.5, a party's failure to pursue that remedy may collaterally estop a federal civil rights action. This 'is a form of res judicata, of giving collateral estoppel effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive *judicial* remedy for reviewing administrative action.'" (*McDaniel* v. *Board of Education* (1996) 44 Cal.App.4th 1618, 1621 [52 Cal.Rptr.2d 448].)

Mola concedes the city acted in a "quasi-judicial capacity" in disapproving the tentative tract map. There is no question that administrative mandamus under Code of Civil Procedure section 1094.5 was the proper remedy for Mola to challenge this decision. That, presumably, is why Mola initially pursued it. (See *California Coastal Com.* v. *Superior Court* (1989) 210 Cal.App.3d 1488, 1496 [258 Cal.Rptr. 567] (hereafter *Ham*).)

The Supreme Court's decision in *Hensler* v. *City of Glendale, supra,* 8 Cal.4th 1 explains in great detail why property owners must first succeed in setting aside a city's decision through a judicial determination on mandamus before pursuing damages for a regulatory taking. *Hensler* stresses the importance of allowing the city to change its mind "rather than pay compensation for a taking. A landowner may not, by seeking only compensation, force a governmental agency to condemn the property." (*Id.* at p. 7.)

■ By dismissing its mandamus action and electing to proceed exclusively for damages, Mola denied the city the opportunity to respond to an adverse judicial ruling by remedying the wrong or mitigating the damages claimed. Mola "seeks to do what the high court says a landowner has no right to do—to force the city to exercise the power of eminent domain." (8 Cal.4th at p. 12.)

The decision in *Healing* v. *California Coastal Com.* (1994) 22 Cal.App.4th 1158 [27 Cal.Rptr.2d 758] does not support a different result. *Healing* held that ". . . administrative mandate is not a substitute for a trial on the takings issues." (*Id.* at p. 1175.) The issue here is just the opposite: whether a trial on the takings issue is a substitute for a trial on administrative mandamus.

As to this issue the subsequent Supreme Court decision in *Hensler* provides the final word. No action in inverse condemnation seeking damages for a permanent taking may be initiated in the first instance without a challenge by mandamus to the application of the ordinance to the affected property. According to *Hensler,* an "owner 'may not . . . elect to sue in inverse condemnation'" instead of by mandamus "'and thereby transmute an excessive use of the police power into a lawful taking for which compensation in eminent domain must be paid.'" (*Hensler* v. *City of Glendale*, *supra*, 8 Cal.4th at p. 14.) An owner that uses inverse condemnation actions to "bypass the remedies the state has made available to avoid the taking" may be deemed to "have waived the 'taking' claim." (*Id.* at p. 19; *Briggs* v. *City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637, 645 [47 Cal.Rptr.2d 29]; *Knickerbocker* v. *City of Stockton* (1988) 199 Cal.App.3d 235, 240-244 [244 Cal.Rptr. 764].)

Mandamus proceedings allow courts to flesh out the issues and factual components of the dispute, including issues of procedural fairness. Review by mandamus is necessary because a court "'cannot determine whether a regulation has gone "too far" unless it knows how far the regulation goes.'" (*Hensler* v. *City of Glendale*, *supra*, 8 Cal.4th at p. 12.)[3]

Mola finds notable the omission of any discussion of the concepts of res judicata and collateral estoppel in *Hensler*. Mola concludes *Hensler* therefore implicitly overruled the holdings in such cases as *Ham, supra*, 210 Cal.App.3d 1488 and *Patrick Media Group* v. *California Coastal Com.* (1992) 9 Cal.App.4th 592 [11 Cal.Rptr.2d 824], both of which held an administrative decision to be res judicata on all issues that were or could have been raised in a successful challenge through administrative mandamus.

We fail to see how *Hensler* could have disapproved of *Ham* and *Patrick Media* when it favorably cited both cases. We read them to mean what they

---

[3]Mola complains, for example, that the city violated due process by "slipping 'evidence' into the record at the last moment and by refusing to give [it] an adequate opportunity to respond or a short continuance to rebut such statements." Mandamus would have allowed Mola the opportunity to submit additional evidence during the mandamus action "if the evidence 'could not have been produced or . . . was improperly excluded at the hearing before' the administrative agency." (*Hensler* v. *City of Glendale*, *supra*, 8 Cal.4th at p. 15, quoting Code Civ. Proc., § 1094.5.)

say. Post-*Hensler* cases speak of res judicata and collateral estoppel with continuing vigor. They refute Mola's strained contention that these principles do not apply to its claim for a federal civil rights violation under 42 United States Code section 1983; instead, they hold such claims are barred as well. (*McDaniel* v. *Board of Education, supra,* 44 Cal.App.4th at p. 1621; *Briggs* v. *City of Rolling Hills Estates, supra,* 40 Cal.App.4th at p. 646.)

In *Briggs* a married couple brought a federal civil rights suit against a city for requiring the removal of an unapproved deck that overlooked their neighbor's property. The homeowners did not seek judicial review of the city council's decision through administrative mandamus, but sued under the federal civil rights act. They alleged the city's decision was improperly motivated because the husband declined to pursue a business investment with the mayor. *Briggs* affirmed the dismissal of the federal claim, stating, "[T]his rule is not the doctrine of 'failure to exhaust administrative remedies.' Rather it is a form of res judicata, of giving collateral estoppel effect to the administrative agency's decision, because that decision has achieved finality . . . . [¶] Plaintiffs contend this doctrine may not be invoked, because their action is under the federal Civil Rights Act; they are wrong." (40 Cal.App.4th at pp. 645-646.)

Mola argues res judicata only applies to administrative proceedings with such "vital safeguards" in the Administrative Procedure Act (Gov. Code, § 11500 et seq.) as the right to cross-examine and subpoena witnesses. Mola says, "[l]ocal land use hearings rarely—if ever—employ APA-style safeguards. Only if they do will they qualify as 'full and fair' opportunities to litigate takings claims."[4]

The cases contain no requirement for an APA-style hearing. (See, e.g., *Briggs* v. *City of Rolling Hills Estates, supra,* 40 Cal.App.4th 637.) As the Ninth Circuit recently stated, "The protective provisions of the California APA do not define the minimum procedural safeguards which must be afforded before the California courts will accord an administrative decision preclusive effect . . . . [A]dministrative preclusion has been acknowledged in cases involving public agencies not encompassed by the . . . APA, *such as cities.*" (*Miller* v. *County of Santa Cruz* (9th Cir. 1994) 39 F.3d 1030, 1036, italics added.) The court concluded, ". . . the absence of formal trial procedures has not historically prevented California courts from according preclusive effect to administrative decisions." (*Ibid.,* fn. 6.)

The city's regulatory decisions on the project were not set in concrete, as Mola claims. Resolution No. 3937 invited the developer to work with the

---

[4]As the city points out, its charter does allow it to compel the attendance of witnesses to examine them under oath, and to compel the production of evidence. It also permits appearances through counsel. (Seal Beach Charter, §§ 410, 411.)

city on revising the project "to provide for appropriate development, including residential uses, on the portions of the subject property suitable for development . . . ." Since the administrative process (including judicial review and remand on mandamus) had been started anew and was not yet complete, Mola's damage claims never ripened because it did not obtain a "final agency position." (*Suitum* v. *Tahoe Regional Planning Agency* (1997) 520 U.S. __, __ [117 S.Ct. 1659, 1667, 137 L.Ed.2d 980] [the finality requirement "responds to the high degree of discretion characteristically possessed by land use boards in softening the strictures of the general regulations they administer"].)

In *Williamson Planning Comm'n* v. *Hamilton Bank* (1985) 473 U.S. 172 [105 S.Ct. 3108, 87 L.Ed.2d 126], the public entity approved and reapproved a proposed project four separate times. Six years later, after the developer spent six years and $3.5 million, the entity changed its mind and asked the developer to submit another plat for approval. The developer declined, stating it had done "everything possible." Despite this, the United States Supreme Court held the takings claim to be premature "until a final decision is made as to how the regulations will be applied to [it.] No such decision had been made at the time [the developer] filed its § 1983 action, because [it] failed to apply for variances from the regulations." (*Id.* at p. 200 [105 S.Ct. at p. 3123]; see also *Long Beach Equities, Inc.* v. *County of Ventura* (1991) 231 Cal.App.3d 1016 [282 Cal.Rptr. 877] [despite history of foot-dragging by planning agency, developer did not show it had pursued all available remedies and received a final rejection or that all of property's beneficial uses were destroyed].)

Having failed to bring the mandamus proceeding to a hearing, Mola cannot rely on a silent record to challenge the fairness of the administrative forum, or to assert that some of the takings issues could not have been litigated. Mola is "drawn into a vacuum of [its] own making . . . ." (*Rossco Holdings Inc.* v. *State of California* (1989) 212 Cal.App.3d 642, 658 [260 Cal.Rptr. 736].)

The preclusive effect of the administrative ruling prevents Mola from litigating its civil rights action, not only against the city, but against the individually named defendants as well. Since these individuals have been sued solely because of their involvement in the process, the unreviewed administrative findings prevent Mola from asserting inconsistent claims against them. (*Miller* v. *County of Santa Cruz, supra,* 39 F.3d at p. 1038.)

### III

Mola claims it is exempt from the rulings in *Hensler, Patrick Media,* and *Ham* because it timely sought mandamus review and "diligently pursued it,"

even though it subsequently abandoned the effort. But there is an obvious distinction between starting a task and completing it. Diplomas are not awarded to students who diligently proceed through the initial years of high school. They must complete their senior year in order to graduate.

So, too, with litigants: Mola is the legal equivalent of a high school dropout. It dismissed its writ petition rather than litigate it. With the voluntary dismissal, it was "as though no [mandamus] action had ever been filed." (*Cook* v. *Stewart McKee & Co.* (1945) 68 Cal.App.2d 758, 761 [157 P.2d 868].) By commencing and then dismissing its mandamus action, Mola obtained no determination in its favor. (*Skelly* v. *Richman* (1970) 10 Cal.App.3d 844, 858 [89 Cal.Rptr. 556].)

Mola's mere *filing* of a mandamus action did not provide notice to the city that the claim had merit. Anyone who pays a filing fee can initiate a complaint; its filing "fail[s] to show anything beyond the fact that defendant has been sued." (*King* v. *Emerson Elec. Co.* (D.Kan. 1993) 837 F.Supp. 1096, 1099, affd. (10th Cir. 1995) 69 F.3d 548 .) As was noted in *East* v. *City of Chicago* (N.D.Ill. 1989) 719 F.Supp. 683, 692, "[o]ne swallow does not make a summer . . . . [A] *filed* case is not necessarily a meritorious one."

*Hensler* made this point clear. The court required a "prepayment judicial *determination*" that a regulation is excessive and constitutes a taking in order to give a city the opportunity to change its mind before being compelled to pay damages. (*Hensler* v. *City of Glendale, supra*, 8 Cal.4th at p. 19, italics added.) It added, *"Only when the review process has been completed* is it possible to determine whether a taking has occurred." (*Id.* at p. 17, italics added.)[5]

Mola challenges the fairness of requiring it to litigate its administrative mandamus action to completion when it lost any "beneficial interest" in the outcome upon the termination of its option rights. It expounds at great length about its years of good-faith discussions with city officials, culminating in the city's "repeated findings" the project complied with applicable development standards. Mola claims the project was "sabotaged" when the regulatory delays left it in "financial ruin," causing the landowner in December 1991 to refuse to extend its option to purchase.

---

[5]Contrary to Mola's arguments, this case is about the statute of limitations. Once Mola voluntarily dismissed its petition for administrative mandamus, it lost the ability to comply with the limitations periods for mandamus review. The 90-day time limit for challenging the city's denial of the vesting tentative tract map through administrative mandamus has long since passed. (Gov. Code, § 66499.37.)

We decline to consider Mola's request that we allow it to amend its complaint to reinstate the mandamus cause of action under a doctrine of equitable tolling. This matter was not raised until Mola's reply brief—too late in the day for us to consider, for "[o]bvious reasons of fairness . . . ." (*People* v. *King* (1991) 1 Cal.App.4th 288, 297, fn. 12 [2 Cal.Rptr.2d 197].)

We decline to give any legal significance to Mola's revisionist history about the city's supposed bad faith in disapproving a project it had approved previously. It was the superior court, not the city, which issued an order declaring the city's prior development approvals to be "void *ab initio.*" In its appeal Mola bitterly complained the order "would throw out this entire four years of planning, processing, and public hearings, and require Mola to start from scratch . . . ." We held the city and Mola had to start again. The Supreme Court declined to intervene.

The city properly took us at our word and "*start[ed]* the process anew once an updated housing element was adopted." (*Wetlands Restoration Society* v. *City of Seal Beach, supra,* G009822, italics added.) Its prior approvals, having been judicially invalidated, retained no residual force. An entity's support for a project "in principle" does not create a constitutionally protected property interest. (*Storek & Storek, Inc.* v. *Port of Oakland* (9th Cir. 1989) 869 F.2d 1322, 1325; see also *Burchett* v. *City of Newport Beach* (1995) 33 Cal.App.4th 1472 [40 Cal.Rptr.2d 1] [plaintiffs had no vested right to build condominiums and could not rely on assurances of city planning department employee]; *Oceanic California, Inc.* v. *North Central Coast Regional Com.* (1976) 63 Cal.App.3d 57 [133 Cal.Rptr. 664] [developer's rights had not vested despite expenditure of nearly $27 million in direct development costs].) Mola did not acquire any vested rights in the city's voided development approvals.

Mola cannot escape responsibility for its failure to bring the mandamus action to trial before it lost its option rights. It delayed the mandamus trial until February 1992 in part because the litigation was "complex" and to accommodate its newly retained trial attorneys. Had Mola kept its trial date, the superior court would have tried the matter before Mola lost its option. The company never informed the court or the city of the pending expiration of its interest.

Mola's stated rationale for dismissing its mandamus claim because it "involuntarily" lost standing when Hellman Properties terminated its development rights on December 6, 1991, is puzzling. Standing to pursue administrative mandamus is not limited to property owners; instead, it applies to persons who have "undertaken the efforts necessary to secure [regulatory] approvals [and who have] a substantial stake in the project by virtue of those efforts . . . ." (*Beresford Neighborhood Assn.* v. *City of San Mateo* (1989) 207 Cal.App.3d 1180, 1189 [255 Cal.Rptr. 434].) Developers have standing even if they have not yet concluded an agreement with the property owner to acquire the site (*ibid.*), and even if their contracts with the property owner have terminated or expired. (*Patrick Media Group, Inc.* v. *California Coastal Com., supra,* 9 Cal.App.4th at p. 606.)

As we have noted, Mola vigorously sought review in the Supreme Court even after losing its option to develop the property. We do not understand how Mola possibly could have maintained standing in the Supreme Court at the same time it claimed to have lacked standing in the superior court. Both judicial proceedings sought to enforce Mola's alleged rights to develop the property. Mola acted inconsistently in pursuing the former while dropping the latter.

## IV

In a supplemental brief filed after oral argument, Mola contended its petition for administrative mandamus became "moot" because its damages became fixed once it lost its option to purchase. Mola claims that option holders, unlike property owners with fee simple interests, have no obligation to pursue administrative mandamus if "mandate would provide nothing that could have enabled [them] to put [their] extinguished property interest to use."

Unlike a fee, an option in real property has a fixed lifespan, the length of which is set by private parties. A public entity has no say in fixing the duration of an option and cannot, therefore, be required to act within such time frame at risk of committing a regulatory taking. Here, once the courts directed Seal Beach to start anew with its entitlement process, the life expectancy of the option was relatively short. That this bare unexercised option to purchase expired before the mandamus action could be completed should not work against the public interest. Seal Beach had no role in negotiating the duration of the option. Nor does anyone contend the city dallied after the courts directed it "to start the process anew."

Because of the "complexity and severity of land use laws and procedures," potential land buyers often secure an option to allow them an opportunity to ascertain what development ultimately will be permitted before committing themselves to a purchase. (*County of San Diego* v. *Miller* (1975) 13 Cal.3d 684, 692 [119 Cal.Rptr. 491, 532 P.2d 139] ["The option has become a prevalent method for securing to a potential land buyer the ability to ultimately purchase the land—while affording him the opportunity to undertake and complete the often expensive and lengthy process of determining whether his intended use of the land will be permitted."].) It may well be that option holders assume the risk that time will not permit this normal entitlement process to run its course, especially if at some point there is judicial intervention. The parties negotiating the length of an option should take into account the possibility that litigation brought by members of the public will cause considerable delay in the entitlement process. The public entity should

not lose the benefits of mandamus simply because the option holder has miscalculated this "often expensive and lengthy process." (*Ibid.*)[6]

Similar concerns impelled the Supreme Court in *Hensler* and the Court of Appeal in *Patrick Media* to maintain the administrative mandamus requirement even as against developers whose property interests terminated or expired. (*Hensler* v. *City of Glendale, supra,* 8 Cal.4th at pp. 28-29; *Patrick Media Group, Inc.* v. *California Coastal Com., supra,* 9 Cal.App.4th at p. 606.)

In *Hensler* the developer argued it should be excused from pursuing an administrative mandamus action because it had sold the property in question before it secured a determination about the propriety of the regulation. (*Hensler* v. *City of Glendale, supra,* 8 Cal.4th at pp. 28-29.) The Supreme Court refused to allow landowners to "convert [their] rights to challenge an uncompensated regulatory taking into an inverse condemnation action by selling the property before seeking administrative relief, either without applying for a development permit or during the permit process. . . . A court cannot determine if application of a land-use restriction will constitute a taking until a final administrative decision has been made regarding use of the property." (*Id.* at p. 29.) The same reasoning applies for holders of an option.

In *Patrick Media Group, Inc.* v. *California Coastal Com., supra,* 9 Cal.App.4th at page 606, a billboard company sued the Coastal Commission for inverse condemnation for imposing a permit condition requiring the removal of three billboards it had placed on coastal property pursuant to a written lease. Like Mola, the company argued it lacked a beneficial interest to pursue administrative mandamus because the landowner decided to terminate the lease following the commission's order to remove the billboards. (*Id.* at pp. 600, 606.)

The court held the billboard company could not avoid the mandamus requirement merely by seeking compensation rather than a change in the

[6]While the United States Supreme Court has indicated the ripeness requirement "might sometimes require multiple proposals or variance applications before a landowner's case will be considered ripe" (*Suitum* v. *Tahoe Regional Planning Agency, supra,* 520 U.S. at p. __, fn. 12 [117 S.Ct. at p. 1667], we do not hold a city may engage in endless stalling tactics, raising one objection after another so that the regulatory process never comes to an end. Here, the direction to restart the process came from the courts, not as a runaround or an unreasonable delay by the city. We reiterate our previous observation in *Chandis Securities Co.* v. *City of Dana Point* (1996) 52 Cal.App.4th 475, 484 [60 Cal.Rptr.2d 481]: "Given the cost, the amount of effort and the length of time it takes to prepare and approve land use proposals, unnecessary delays in approving a proposed development or repetitive denials of specific plans complying with the city's general plan will amount to a taking."

conditions imposed by the commission. *Patrick Media* stressed the important public policy concerns of allowing the agency to reverse course when its decisions are questioned to avoid liability for inverse condemnation actions "if it determines enforcement of its order does not merit the compensation required to be paid." (9 Cal.App.4th at p. 612.) Such decisions should be made according to the "deliberate determination of public officials" not at the "election" of private parties. (*Ibid.*) As *Patrick Media* explained, "[I]f persons affected by adverse administrative actions—be they landowners, permit applicants, or others—were permitted to refrain from challenging such actions until mitigation of damages by the government becomes impossible through the passage of time or events, and then present monetary claims, the financial burden on government could become overwhelming." (*Id.* at pp. 612-613.)

We share *Patrick Media*'s concerns about what would happen if parties were permitted to "make mitigation of damages by the government . . . impossible" by creating arbitrarily short time periods through constantly expiring development options. For the same public policy reasons articulated by Justice Croskey in *Patrick Media,* we decline to carve out a new exception to the administrative mandamus requirement for persons whose development rights (whether by option or some other form of consensual agreement) have been allowed to expire. Unless a governmental agency has an early opportunity to change the challenged decision, damage actions cannot be maintained. Were we to rule otherwise, we readily foresee a day when developers would negotiate increasingly shorter "sweetheart" option agreements (one year? thirty days?), thereby avoiding the requirement for judicial review by administrative mandamus.

Mola cannot set its own deadline for the completion of a successful mandamus action. The trial court properly gave preclusive effect to the city council's administrative decision, which achieved finality when Mola gave up its challenge to set it aside.

The judgment is affirmed. Respondents shall have their costs on appeal.

Sills, P. J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 19, 1997.