[No. B147202. Second Dist., Div. Six. June 28, 2001.]

COUNTY OF SAN LUIS OBISPO, Petitioner, v.
THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,
Respondent;
JACK MUNARI, Real Party in Interest.

COUNSEL

James B. Lindholm, Jr., County Counsel, Raymond A. Biering and Rita L. Sciaroni, Deputy County Counsel; Hall & Hieatt, Clayton U. Hall and Patricia Gomez for Petitioner.

No appearance for Respondent.

William S. Walter for Real Party in Interest.

OPINION

**GILBERT, P. J.**—In response to real party in interest's petition, the trial court granted a writ of administrative mandamus to compel a county planning department to issue him certificates of compliance on real property. We grant a writ of mandate to compel the trial court to vacate its order because real party no longer holds title to the property and therefore lacks standing.

### BACKGROUND

The subject property consists of 834 acres of range located near the town of Paso Robles. In 1889, when Benjamin Harrison was President, Teddy Roosevelt was a civil service commissioner, and Gilbert and Sullivan's The Gondoliers was playing at London's Savoy Theatre, a subdivision map for the property was filed with the San Luis Obispo County Clerk. During the ensuing years, these bucolic fields were used mainly for agriculture. But, as is the nature of things, change was bound to occur.

About 100 years later, Jack Munari, real party in interest, acquired this land. At the time, the acreage was encumbered by a deed of trust in favor of William R. Zappas. Munari alleges to have spent four years attempting to gain governmental approval to develop the property.

In 1995, Munari applied to the San Luis Obispo County Planning Department for 577 certificates of compliance under the 1889 subdivision map. The first Subdivision Map Act was not enacted until 1893.[1] On July 12, 1996, the planning department rejected this request. It took the position that the 1889 subdivision map did not create a separate parcel under the Subdivision Map Act, and would allow only 135 lots to be developed.

On July 25, 1996, Munari appealed the decision to the board of supervisors. He alleges that the board unreasonably refused to schedule a hearing

---

[1]A certificate of compliance is a document prepared by a local agency which confirms that the subject property complies with the Subdivision Map Act. (Gov. Code, § 66499.35.)

until January 6, 1998, at which time it upheld the decision of the planning department.

On February 13, 1998, Munari filed a civil suit for damages, declaratory relief, violation of his civil rights, inverse condemnation, and for a writ of administrative mandate. In this action he claimed, among other things, that the county's actions interfered with his property rights and devalued the property.

Facing financial woes, Munari filed for bankruptcy. The holder of the deed of trust initiated foreclosure proceedings. Munari purchased the right to pursue this action from the bankruptcy trustee for $15,000.

Four days after Munari filed suit, Zappas acquired the property in a foreclosure sale. Zappas filed a complaint in intervention. The action was assigned by Zappas to the Weyrich Development Company. Weyrich eventually settled its claim with the county and dismissed the action.

On December 19, 2000, the superior court granted Munari's motion for summary adjudication on his mandamus and declaratory relief causes of action. It ruled that subdivision maps, recorded prior to the enactment of the Subdivision Map Act of 1893, created valid lots; that the lots are specifically protected by the Subdivision Map Act; and that the county was obliged, therefore, to issue certificates of compliance for all 577 lots. Respondent court found that Munari had standing because, in order for him to obtain damages for inverse condemnation, "he must first establish by . . . administrative mandamus that the administrative decision is invalid." It issued an interlocutory order granting a writ of mandate directing that the county set aside its denial of the certificates of compliance.

We issue an order to show cause because the county lacks an adequate remedy at law.

## DISCUSSION

### Standing

Usually, there is no question that a taking occurs when a governmental entity physically occupies property or takes title to it. There is a question, not to mention a difficult one, when a property owner claims a taking has occurred by application of a land use regulation to his property. Not all land use regulations are takings. (See *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 10 [32 Cal.Rptr.2d 244, 876 P.2d 1043].) ■ To determine whether

application of a regulation constitutes a taking, there must be an individualized assessment of the impact of the regulation on the particular property. (*Ibid.*)

Such an individualized assessment cannot be made until there is a final administrative decision. (*Hensler v. City of Glendale, supra,* 8 Cal.4th at pp. 10-11.) The final administrative decision must be one that affords the administrative agency the opportunity to amend its decision or grant a variance to avoid paying should it be judicially determined that the particular application of the regulation constitutes a taking. (*Ibid.*)

A state may establish reasonable procedures by which taking claims may be brought. (*Hensler v. City of Glendale, supra,* 8 Cal.4th at p. 11.) In California, the procedure includes à petition for writ of administrative mandamus to review the final administrative decision. (*Id.* at p. 14; Code Civ. Proc., § 1094.5.)

The court in *Patrick Media Group, Inc. v. California Coastal Com.* (1994) 9 Cal.App.4th 592, 612 [11 Cal.Rptr.2d 824], explained why administrative mandate is required prior to seeking damages in inverse condemnation: "The requirement that challenges to administrative actions constituting takings be brought initially by administrative mandamus assures that the administrative agency will have the alternative of changing a decision for which compensation might be required. If no such early opportunity were given, and instead, persons were permitted to stand by in the face of administrative actions alleged to be injurious or confiscatory, and three or five years later, claim monetary compensation on the theory that the administrative action resulted in a taking for public use, meaningful governmental fiscal planning would become impossible." (Quoted with approval in *Hensler v. City of Glendale, supra,* 8 Cal.4th at pp. 27-28.)

█ Here a mortgage foreclosure divested Munari of all interest in the property prior to completion of judicial review of the administrative action. This makes it impossible for Munari to receive relief.

Government Code section 66499.35, subdivision (a), provides that certificates of compliance may be issued on request of "[a]ny person owning real property or a vendee of that person pursuant to a contract of sale of the real property . . . ." The Legislature did not intend such certificates to be issued to someone who has no interest in the land whatsoever. "Mandamus will not lie to compel the performance of any act which would be void, illegal or contrary to public policy. [Citation.]" (*Duff v. City of Gardena* (1980) 108 Cal.App.3d 930, 936 [167 Cal.Rptr. 4].)

Moreover, Munari's successor in interest has settled with the county. It is undisputed that the settlement requires the county to issue significantly fewer certificates than the 577 certificates Munari sought. An order requiring the county to issue the 577 certificates Munari seeks would conflict with the settlement.

In apparent recognition of these problems, Munari claims the trial court did not order the county to issue certificates of compliance. Instead, Munari contends the trial court did nothing more than order the county to vacate its decision denying him the certificates. Munari believes he would be in a position to use the certificates should he ever reacquire the property. Although we need not consider the issue, we question Munari's implicit assumption that if he reacquires the property he will not be bound by the prior settlement allowing the county to issue fewer certificates.

Munari presently has no beneficial interest in the property. He has no more rights than any other stranger to the title. What Munari apparently seeks is a hypothetical determination that he would be entitled to the certificates if he were the owner or vendee of the property. Such hypothetical determinations are not within the purview of administrative mandate. (See *Grant v. Board of Medical Examiners* (1965) 232 Cal.App.2d 820, 827 [43 Cal.Rptr. 270] [writ will not lie to enforce a mere abstract right].)

Under Munari's reasoning, a stranger to these proceedings could make the claim that he or she may someday acquire the subject property and, therefore, is entitled to petition for mandamus. Hope springs eternal, but writ relief is temporal and requires firmer substance.

Witkin recognizes that the alleged duty or corresponding right in mandate proceedings may be "abstract, inchoate or so lacking in substantiality that the 'extraordinary' remedy of mandamus is not warranted." (8 Witkin, Cal. Procedure (4th ed. 1997) Extraordinary Writs, § 73, p. 855.) This passage in Witkin also quotes from *Clementine v. Board of Civ. Ser. Commrs.* (1941) 47 Cal.App.2d 112, 114 [117 P.2d 369], as follows: "A writ of mandate will not issue to enforce an abstract right, when the occurrence of an event subsequent to the commencement of the proceeding makes the issuance of the writ of no practical benefit to the petitioner."

Munari's reliance on *Mola Development Corp. v. City of Seal Beach* (1997) 57 Cal.App.4th 405 [67 Cal.Rptr.2d 103] is misplaced. There the developer's interest in the land was limited to an option to purchase. The city denied the developer's application for a vesting tentative subdivision map on the ground it was not in compliance with the general plan. The developer filed a

petition for writ of administrative mandate and a suit for damages for civil rights violations and inverse condemnation. While the petition for writ of mandate was pending, the developer's option expired and it lost all interest in the land. The developer dismissed its mandate action and sought to proceed with its action for damages.

The Court of Appeal determined that the developer's failure to pursue mandamus precluded it from pursuing its action for damages. The developer argued that the mandamus action had become moot; mandate could provide nothing that would enable the developer to put its extinguished property interest to use. (*Mola Development Corp. v. City of Seal Beach, supra*, 57 Cal.App.4th at p. 416.) The court stated that land owners, permit applicants and others, cannot wait until the mitigation of damages by the government becomes impossible through passage of time or events. (*Id.* at p. 418.) The court suggested that parties negotiating the length of an option take into account possible delays in the permitting process. (*Id.* at p. 416.)

Munari points out that *Mola* determined that the developer had standing in spite of the loss of all interest in the property. (*Mola Development Corp. v. City of Seal Beach, supra*, 57 Cal.App.4th at p. 415.) *Mola* concluded that one need not be a property owner to pursue administrative mandate; mandamus applies to all persons who have undertaken efforts to secure a regulatory permit and who have a substantial stake in the project by virtue of those efforts. Even a developer whose contracts with the property owners have terminated or expired may still have standing. (*Ibid.*, citing *Patrick Media Group, Inc. v. California Coastal Com., supra*, 9 Cal.App.4th at p. 606.)

Such statements may be true enough in the abstract. In appropriate circumstances, one without an interest in property may have standing to challenge an administrative decision. Thus, for example, neighbors of a permit applicant may have standing to challenge the agency's grant of a permit. (See *Highland Development Co. v. City of Los Angeles* (1985) 170 Cal.App.3d 169, 179 [215 Cal.Rptr. 881] [neighborhood association has sufficient interest in land use permit for contiguous property to support intervention], disapproved on other grounds in *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743, fn. 11 [29 Cal.Rptr.2d 804, 872 P.2d 143].) In such a case, administrative mandate may bring the neighbors who challenge the grant of the permit appropriate relief.

Similarly, in *Patrick Media Group, Inc. v. California Coastal Com., supra*, 9 Cal.App.4th 592, a billboard company claimed its leases were cancelled pursuant to a permit condition imposed by the coastal commission requiring the developer to remove all billboards. (Bus. & Prof. Code, § 5412.6 [compensation when permit conditioned on removal of unlawful display].) The

court held that the billboard company was required to seek removal of the condition through administrative mandate prior to prosecuting its claim for compensation. In *Patrick Media Group, Inc.*, the mandamus action could provide relief. Removal of the permit condition would eliminate the obstacle that the billboard company claimed prevented it from maintaining its billboards.

Here Munari challenges the county's denial of his application for certificates of compliance. But as we have said, mandamus can only bring appropriate relief to someone who has an interest in the land subject to the certificates. Because loss of the property by foreclosure prevents the trial court from granting Munari any relief by administrative mandate, Munari has no standing to maintain his mandamus action. To the extent *Mola* may be read to the contrary, we decline to follow it. *Mola*, however, did not contradict the developer's assertion that the expiration of its option to purchase made its mandamus action moot. The court simply held that in the absence of a completed mandamus action, the developer's action for damages cannot be maintained.

Munari alleges that loss of his property by foreclosure was due to the county's deliberate delays in processing his application for the certificates of compliance. The county vigorously denies it caused unreasonable delays and claims that Munari caused delays by failing to pay required fees to process his application. It is the county's position that Munari's loss of his property was solely due to his inability to pay the debt service.

We do not view the trial court's decision as having reached the issue of administrative delays. Nor need we reach the issue. Had Munari believed the county was unreasonably delaying the processing of his application, he had a remedy in ordinary mandate. (Code Civ. Proc., § 1085.) Although ordinary mandate may not compel the exercise of discretion in a particular manner, it may compel a public officer to act. (*MCM Const., Inc. v. City and County of San Francisco* (1998) 66 Cal.App.4th 359, 368 [78 Cal.Rptr.2d 44] [mandamus is appropriate to compel the exercise of discretion but not to control the exercise of discretion]; *Patten v. San Diego County* (1951) 106 Cal.App.2d 467, 470 [235 P.2d 217].) Munari cannot wait until he loses the property to act.

### Declaratory Relief

Finally, we consider the declaratory relief cause of action. The trial court's order stated, "The determination of the declaratory relief cause of action is included in its determination of the mandamus cause of action."

■ Declaratory relief is not appropriate for seeking review of an administrative action. (*State of California v. Superior Court* (1974) 12 Cal.3d 237, 251 [115 Cal.Rptr. 497, 524 P.2d 1281].) Administrative mandate is the appropriate procedure for such a review. (*Ibid.*)

In any event, Munari's argument that the county should determine he is entitled to the certificates without issuing them to him would require a legal impossibility. Government Code section 66499.35, subdivision (a) provides in part, "Upon making the determination, the city or the county shall cause a certificate of compliance to be filed for record with the recorder of the county in which the real property is located." The county may not perform half the act. If Munari were entitled to the certificates, the county would have to issue them.

Let a writ of mandate issue directing the superior court to vacate its order granting summary adjudication on Munari's administrative mandamus and declaratory relief causes of action and to enter a new order denying Munari's motion for writ relief.

The order to show cause, having served its purpose, is discharged. Costs are awarded to petitioner.

Coffee, J., and Perren, J., concurred.

A petition for a rehearing was denied July 27, 2001, and the petition of real party in interest for review by the Supreme Court was denied October 10, 2001.