[No. B114226. Second Dist., Div. Four. Dec. 28, 1999.]

SYED MOUZZAM ALI, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

Law Offices of Rosario Perry, Rosario Perry and Marie E. Berglund for Plaintiff and Appellant.

James K. Hahn, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Michael L. Klekner, Deputy City Attorney, for Defendant and Appellant.

## OPINION

## VOGEL (C. S.), P. J.—

### INTRODUCTION

The City of Los Angeles (the City) appeals from a judgment in inverse condemnation in favor of Syed Mouzzam Ali (Ali).

The essential facts and procedural background are as follows: when Ali's hotel, the Ferraro, was substantially destroyed by fire in November 1988, Ali desired to demolish it and sell the land. He applied for a demolition permit in January 1989. The City withheld the permit because officials believed the Ferraro was a single room occupancy (SRO) hotel, and the City had an ordinance prohibiting demolition of such low-income housing unless (1) it was infeasible to repair, or (2) the owner agreed to replace it with similar housing, or (3) the owner established extreme hardship for an exemption. Eventually, but not until August 1990, the City determined the Ferraro was not an SRO hotel and permitted its demolition. In the meantime, however, commencing in July 1989 a series of fires occurred in the abandoned building, the City determined that Ali was not providing adequate security, and the City contracted for 24-hour security with the costs assessed against Ali pursuant to an ordinance.

Ali filed an action against the City, which in part sought a writ of mandate (Code Civ. Proc., § 1094.5), to set aside the assessments on the grounds that the delay in issuance of the demolition permit was unlawful, and if the City had promptly issued the demolition permit Ali would have promptly demolished the building, and the security measures would never have been necessary. On a prior appeal in this case we held that the delay in issuing the demolition permit based on the SRO ordinance violated the Ellis Act, Government Code section 7060, subdivision (a), which provides that no public entity may compel the owner of any residential real property to offer or to continue to offer accommodations in the property for rent or lease. (*Ali v. City of Los Angeles* (May 9, 1995) B077712 [nonpub. opn.].) We said that Ali would be entitled to vacate all or a portion of the assessments if he could prove that he would and could have complied with all legitimate conditions of a demolition permit and would have demolished the building before the

need for security measures arose. We remanded the matter for a trial of that issue. The remand left open, pursuant to the parties' stipulation and the trial court's discretion concerning proposed amendments to the complaint, whether additional causes of action might be tried. The present appeal arises from the proceedings following the first appeal.

In bifurcated proceedings, the writ of mandate was tried first by Judge O'Brien. Judge O'Brien found wholly in Ali's favor on this cause of action. In accordance with our prior opinion, Judge O'Brien ruled that the delay in issuing the demolition permit from January 19, 1989, through August 1, 1990, violated the Ellis Act. Judge O'Brien found factually that the delay was due solely to the actions of the City and that had the permit been issued without delay Ali would have demolished the building before the need ever arose for the security measures assessed against Ali. He ruled that all the assessments be set aside and refunded to Ali ($399,000 plus interest), and that "Any subsequent judgment on the remaining causes of action will incorporate this Statement of Decision and the granting of the Petition for Writ of Administrative Mandate." The subsequent judgment so provided. The City *does not appeal from* the portion of the judgment granting the writ of mandate setting aside and refunding the assessments.

The remaining issues were tried by Judge Crispo. On Ali's cause of action for inverse condemnation Judge Crispo ruled for Ali. He ruled that the City had taken Ali's property in two ways, a regulatory taking and a physical taking. He found that the delay in issuing the demolition permit was a *regulatory* taking of Ali's property because demolition was the only economically viable option for use of the land; the delay thus deprived Ali of the only economically viable use of his property. Judge Crispo also found that the posting of security guards by the City was a *physical* taking of Ali's property. He ruled that this taking could not be justified based on the health and safety concerns that prompted the City, because those problems were created by the City's own unlawful conduct in delaying the demolition permit. The parties stipulated as to damages, and the judgment awards Ali $1,199,237 plus interest for inverse condemnation. The City appeals from this portion of the judgment.[1]

We conclude that the judgment in favor of Ali in inverse condemnation should be affirmed on the ground that the City's wrongful denial of a demolition permit between January 1989 and August 1990 in violation of the

---

[1]Judge Crispo ruled, on the other hand, that the actions of the City did not additionally violate the federal Civil Rights Act, 42 United States Code section 1983. Ali cross-appeals from the portion of the judgment that rejected Ali's cause of action under the federal Civil Rights Act.

Ellis Act effected a temporary regulatory taking of Ali's property. This conclusion renders moot whether there was a temporary physical taking during a portion of the same time period or whether the same conduct should be characterized as a violation of Ali's federal civil rights.

### STANDARD OF REVIEW

Whether the actions of the City constituted a taking of Ali's property is a mixed question of law and fact. (See *Healing v. California Coastal Com.* (1994) 22 Cal.App.4th 1158, 1170 [27 Cal.Rptr.2d 758]; *Aaron v. City of Los Angeles* (1974) 40 Cal.App.3d 471, 484 [115 Cal.Rptr. 162].) Our review is neither entirely de novo, as contended by the City, nor entirely limited by the substantial evidence rule, as contended by Ali. (*Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1127-1130 [61 Cal.Rptr.2d 207].) Mixed questions of law and fact involve three steps: (1) the determination of the historical facts—what happened; (2) selection of the applicable legal principles; and (3) application of those legal principles to the facts. The first step involves factual questions exclusively for the trial court to determine; these are subject to substantial evidence review; the appellate court must view the evidence in the light most favorable to the judgment and the findings, express or implied, of the trial court. (*Board of Administration v. Wilson, supra,* 52 Cal.App.4th at p. 1129; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801 [35 Cal.Rptr.2d 418, 883 P.2d 960]; *Patrick Media Group, Inc. v. California Coastal Com.* (1992) 9 Cal.App.4th 592, 605 [11 Cal.Rptr.2d 824].) Thus, contrary to the City's argument, we do not apply de novo review to all factual findings underlying the trial court's judgment. (*Board of Administration v. Wilson, supra,* 52 Cal.App.4th at pp. 1129-1130.) Only the second and third steps involve questions of law for our de novo review. (*Ghirardo v. Antonioli, supra,* 8 Cal.4th at pp. 800-801; *Board of Administration v. Wilson, supra,* 52 Cal.App.4th at pp. 1129-1130.)

### DISCUSSION

In *First Lutheran Church v. Los Angeles County* (1987) 482 U.S. 304 [107 S.Ct. 2378, 96 L.Ed.2d 250] (hereafter *First English*),[2] the Supreme Court indicated that a governmental regulation which *deprives a landowner of all economically viable use of the land* may constitute a regulatory taking of property which requires just compensation under federal constitutional law. (*Id.* at pp. 312-313 [107 S.Ct. at p. 2384].) This is consistent with the United States Supreme Court's pronouncements both before and after *First English*. (See *Agins v. City of Tiburon* (1980) 447 U.S. 255, 260 [100 S.Ct. 2138,

---

[2]The full name of the church was First English Evangelical Lutheran Church of Glendale, and the case is more typically known to the bench and bar as the *First English* case.

2141, 65 L.Ed.2d 106] [ordinance allowed some development and therefore did not constitute a denial of all economically viable use; includes statement that a zoning law which "denies an owner economically viable use of his land" would constitute a taking]; *Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1009, 1015-1018, 1020, 1022-1030 [112 S.Ct. 2886, 2890, 2893-2894, 2896, 2897-2901, 120 L.Ed.2d 798] [statute prohibited all development of beachfront property and trial court found this rendered property valueless; held this constituted a taking; exception for traditional exercise of police power to prevent "noxious uses" or "nuisance" did not apply, because under the circumstances the statute simply required property to remain undeveloped in order to promote a general societal interest].)

The main significance of *First English* is its holding that a *temporary* regulatory taking consisting of the temporary deprivation of all economically viable use of the property may also require compensation for the period of time the regulation denied the owner all use of the land. (*First English, supra,* 482 U.S. at pp. 318, 321 [107 S.Ct. at pp. 2387, 2389].) The court stated, "Here we must assume [on demurrer] that the Los Angeles County ordinance [enacting a moratorium on construction of buildings on the church's property in a floodplain] has denied appellant all use of its property for a considerable period of years, and we hold that invalidation of the ordinance without payment of fair value for the use of the property during this period of time would be a constitutionally insufficient remedy." (*Id.* at p. 322 [107 S.Ct. at p. 2389].) "We merely hold that where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." (*Id.* at p. 321 [107 S.Ct. at p. 2389].)

The court in *First English* indicated two circumstances in which such a temporary denial of all use of the property would not require compensation: (1) the denial of use was required for public *safety* reasons (482 U.S. at p. 313 [107 S.Ct. at p. 2384] [on demurrer the court had no occasion to decide "whether . . . the denial of all use was insulated as a part of the State's authority to enact safety regulations"]),[3] or (2) the temporary deprivation was merely a normal delay in the permissible regulation of development.

---

[3]In the present case the denial of a demolition permit based on the SRO ordinance does not involve the "public safety" exception. An example of the public safety exception is found in the *First English* case itself, in the subsequent California proceedings on remand from the United States Supreme Court. There it was eventually determined that the interim moratorium on construction of buildings on the church's property in a floodplain satisfied the exception because it was necessary to preserve human life in light of a fatal flood which had occurred there. (*First English Evangelical Lutheran Church v. County of Los Angeles* (1989) 210 Cal.App.3d 1353, 1370 [258 Cal.Rptr. 893].)

(482 U.S. at p. 321 [107 S.Ct. at p. 2389] [not deciding "the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like"].)

In *Landgate, Inc. v. California Coastal Com.* (1998) 17 Cal.4th 1006 [73 Cal.Rptr.2d 841, 953 P.2d 1188] (hereafter *Landgate*), the California Supreme Court elaborated upon the second exception, "normal delays" in the "development process." There the County of Los Angeles had approved a lot split involving property in the coastal zone. When the owner sought to build upon one of the newly split parcels, the California Coastal Commission refused to issue a permit for any construction, contending that the prior lot split was not legal. Construction was delayed for two years until the landowner obtained a court judgment that the Coastal Commission had no legal jurisdiction over the lot split. The landowner contended this delay denied it all viable use of the property for two years, which constituted a temporary taking requiring compensation. The California Supreme Court held to the contrary, that "the mistaken assertion of jurisdiction over a development is part of the development approval process, and development delays that result therefrom may be imposed on the developer rather than the general taxpayer without violating the United States Constitution." (*Id.* at pp. 1021, fn. omitted.) "Here, there was a postponement of development pending resolution of a threshold issue of the development approval process—whether the lot was legal—and not a final decision denying development." (*Id.* at pp. 1029-1030.) "[A] judicial determination of the validity of certain *preconditions to development* is a normal part of the development process, and the fact that a developer must resort to such a determination does not constitute a per se temporary taking." (*Id.* at p. 1030, italics in original.)

In the reply briefs submitted after *Landgate* was decided, the City contends *Landgate* controls and compels judgment in favor of the City, whereas Ali distinguishes *Landgate* and contends *First English* controls and compels affirmance of the judgment in favor of Ali. We conclude the facts of the present case are distinguishable from *Landgate*, and the delay between January 1989 and August 1990 in issuing a demolition permit was a temporary regulatory taking, not a normal delay in the development process.

For the purpose of this appeal we treat as an established fact that the denial of the demolition permit deprived Ali of all economically viable use of his land during the period in question. (See *First English, supra*, 482 U.S. at pp. 313, 321 [107 S.Ct. at pp. 2384, 2389] [allegation of complaint assumed to be true on demurrer], and *Lucas v. South Carolina Coastal Council, supra*, 505 U.S. at pp. 1009, 1020 [112 S.Ct. at pp. 2890, 2896] [trial court's factual findings were binding].) Judge Crispo made the following factual findings: "The SRO ordinance prevented the immediate demolition of the Ferraro. This denied Ali the benefits of his contract with Harouni

for the sale of the property on which the Ferraro stood. As a result of the November 17, 1988 fire, the property was damaged beyond feasible repair. Consequently, demolition was the only economically viable option for the Ferraro's owner. Additionally, the City later evicted the few remaining tenants still occupying the hotel, further denying Ali the rents the Ferraro generated." The City does not even acknowledge Judge Crispo's findings and makes no attempt to satisfy its burden as an appellant to demonstrate that there is *no substantial evidence* to support those findings. (*Green v. Green* (1963) 215 Cal.App.2d 31, 35 [30 Cal.Rptr. 30].) The City's sole assertion on this point, that Ali was not denied all economically viable use of his property because "[a]lthough there was a delay in the sale of his property to Harouni, Ali did sell to the original purchaser," is a non sequitur that fails to address the temporary deprivation of all use of the property.

■ This brings us squarely to the nub of this case: was the erroneous denial of a demolition permit, in violation of the Ellis Act, which temporarily deprived Ali of all economically viable use of the property, merely a "normal delay" in the "development process" as explained in *Landgate*?

In *Landgate*, the landowner obtained from the county a lot split in order to develop undeveloped property which lay in the coastal zone. The Coastal Commission would not approve any construction because, it contended, the lot split was not legal. All development was thereby stymied until, through litigation, the landowner obtained a judgment that the Coastal Commission had no legal authority over the lot split. The landowner later contended this delay was a temporary regulatory taking requiring compensation. The trial court and the Court of Appeal agreed, but the California Supreme Court granted review and held the delay was a normal delay in the development process.

The Supreme Court explained that, "Part of that regulatory process is the imposition of certain procedural conditions and substantive requirements on development. . . . [A] government agency may deny a development permit when the reasonable conditions imposed on development are not met[,] without that denial constituting a taking. . . . [T]he imposition of a development condition is not a constitutional violation merely because that condition is subsequently shown to have been erroneously imposed. [¶] . . . Landgate's development was denied because of the Commission's plausible, though perhaps legally erroneous, position that Landgate or its predecessor failed to comply with one of the conditions of obtaining a coastal development permit by illegally reconfiguring the lot boundaries." (*Landgate, supra,* 17 Cal.4th at pp. 1027-1028.)

The Court of Appeal had concluded that the commission's position on the illegality of the lot split furthered no legitimate governmental interest,

merely " 'the Commission's ongoing jurisdictional spat with the County of Los Angeles combined with a desire to prevent Landgate from building on its parcel.' " (*Landgate, supra,* 17 Cal.4th at p. 1016.) The Supreme Court disagreed based on the circumstances of the particular case. It held the Court of Appeal erred in "attempt[ing] to divine, through the statements of the commissioners and Commission staff and through circumstantial evidence, the 'true,' illegitimate, motive for the Commission's decision to deny Landgate's development permit. The proper inquiry is not into the subjective motive of the government agency, but whether there is, objectively, sufficient connection between the land use regulation in question and a legitimate governmental purpose so that the former may be said to substantially advance the latter." (17 Cal.4th at p. 1022.) The Supreme Court found that the commission's position on the illegality of the lot split was objectively reasonable. It was not based "on formal, jurisdictional or bureaucratic grounds, but on the view that such [lot line] adjustment would lead to an intensification of the environmental impacts with which the Commission was concerned." (*Id.* at p. 1023.) Furthermore, the commission's conclusion concerning its legal authority to deny the lot line adjustment was "following the Attorney General's advice, that [Public Resources Code] section 30106 gave it authority[. Its position was] 'supported by a plausible though [perhaps] erroneous legal argument' and therefore not the basis of a taking." (*Id.* at p. 1025.)

The Supreme Court cautioned, however, "It would be, of course, a different question if, even though the Commission's position on the lot line adjustment substantially advanced a legitimate state interest, that position was so unreasonable from a legal standpoint as to lead to the conclusion that it was taken for no purpose other than to delay the development project before it. Such a delaying tactic would not advance any valid government objective." (*Landgate, supra,* 17 Cal.4th at p. 1024.) "Of course, as explained in the preceding part of this opinion, a government agency may not evade the takings clause by fabricating a dispute over the legality of a lot, or by otherwise arbitrarily imposing conditions on development in order to delay or discourage that development. The government agency's assertion of authority, whether or not erroneous, must advance some legitimate government purpose." (*Id.* at p. 1029.) In other words, even if the agency action depriving the owner of all viable use occurs "during" the development process, and ostensibly serves a proper governmental purpose, it is not a "normal" delay in the process if it is so unreasonable from a legal standpoint as to be arbitrary. (*Id.* at pp. 1021, 1022, 1024-1025, 1029, 1030.)

Applying the teachings of *Landgate* to the present case, we conclude the City's attempt to enforce its SRO ordinance in violation of the Ellis Act

involves the "different question" suggested by *Landgate* (*supra*, 17 Cal.4th at p. 1024), where the position taken by the City was "so unreasonable from a legal standpoint" (*ibid.*) as to be arbitrary, not in furtherance of any legitimate governmental objective, and for no other purpose than to delay any development other than for an SRO hotel. Therefore the delay in demolition of the hotel was a temporary regulatory taking requiring compensation.

The City contends that its erroneous enforcement of the SRO ordinance had the legitimate governmental objective of preserving the availability of low income housing. This apparent purpose does not save the City from its temporary taking of Ali's property, because it was arbitrary and unreasonable in light of the Ellis Act. In our prior opinion in this case, we pointed out that Ali's argument was supported by authority already existing when the City in 1989 and 1990 prevented Ali from demolishing his hotel. In *Javidzad v. City of Santa Monica* (1988) 204 Cal.App.3d 524 [251 Cal.Rptr. 350], a local rent control law required that in order to obtain a permit to demolish controlled rental units a landlord must show that repair is not economically feasible or that redevelopment of the property would include 15 percent low-income housing. The appellate court held the Ellis Act preempted the local law and that the owner was entitled to issuance of a demolition permit without having to comply with the local law conditions. (*Id.* at pp. 530-531.) We concluded, "Similarly here, the SRO ordinance prevents a landlord who desires to go out of the SRO hotel business from demolishing the hotel and redeveloping the property, and instead requires the landlord either to repair the hotel and remain in business, rebuild with replacement units, or establish financial hardship. The SRO ordinance suffers from the same defects as the Santa Monica rent control law in *Javidzad*." (*Ali v. City of Los Angeles, supra*, B077712.)

Therefore, based on the teachings of *Landgate*, the delay in demolition caused by the erroneous enforcement of the SRO ordinance despite the prohibitions of the Ellis Act was not a "normal" delay in the development process. Because the delay temporarily deprived Ali of all use of his property and was not a normal delay in the development process, it was a temporary regulatory taking which required compensation under *First English*. Judge Crispo correctly awarded a judgment in favor of Ali in inverse condemnation.

The City alternatively contends that the temporary delay was Ali's own fault, because Ali allegedly did not timely seek administrative review of the determination that the Ferraro was an SRO hotel. It is the City's position that

timely exhaustion of administrative remedies is a necessary part of the normal development process, citing *Hensler v. City of Glendale* (1994) 8 Cal.4th 1 [32 Cal.Rptr.2d 244, 876 P.2d 1043]. This argument does not apply to the circumstances of this case. First, it is precluded by the factual findings of the trial court. Both Judge O'Brien and Judge Crispo found factually that *none* of the delay in issuance of the demolition permit is attributable to Ali. As noted *ante*, the City does not appeal from Judge O'Brien's findings, which were incorporated in the judgment, and the City does not challenge Judge Crispo's factual findings for lack of substantial evidence.

Moreover, administrative review of the determination whether the Ferraro was an SRO hotel is irrelevant. Whether or not the Ferraro was an SRO hotel, Ali was entitled under the Ellis Act to demolish it and go out of the SRO hotel business. We held in the prior appeal that Ali was excused from exhausting administrative remedies, because the issue whether the City's SRO ordinance was invalid in light of the Ellis Act was not an issue for the building and safety department acting administratively. We are not reviewing the classification of the Ferraro as an SRO hotel, but rather the City's legally erroneous invocation of its SRO ordinance against Ali in violation of the Ellis Act. The City may not simply delay development by fabricating an irrelevant dispute about whether the Ferraro was an SRO hotel. (*Landgate, supra,* 17 Cal.4th at p. 1029.)

If the City is arguing that Ali's litigation to determine the illegality of applying the SRO ordinance to him in light of the Ellis Act is part of the "normal delay in the development process" within the meaning of *Landgate*, we reject that contention. In *Landgate*, the Coastal Commission's position on the illegality of the prior lot split was plausible, supported by written advice from the Attorney General, and furthered legitimate governmental objectives relating to coastal development. Here the inapplicability of the SRO ordinance in light of the Ellis Act was apparent from a 1988 appellate court opinion involving a similar requirement in the Santa Monica rent control ordinance. The City has never disputed the unenforceability of the SRO ordinance in light of the Ellis Act nor claimed a good faith mistake similar to the mistake of the Coastal Commission in *Landgate*. The City's delay of the demolition permit was so unreasonable from a legal standpoint as to be arbitrary and not in furtherance of any legitimate governmental objective. Therefore the delays incurred by the City's insistence that the SRO classification precluded issuing a demolition permit, including the ensuing litigation, were not simply normal delays in the development process.

## DISPOSITION

The judgment is affirmed. Plaintiff Ali's cross-appeal from the judgment is dismissed as moot. Costs on appeal are awarded to plaintiff.

Curry, J., and Dau, J.,* concurred.

A petition for a rehearing was denied January 25, 2000, and the petition of appellant City of Los Angeles for review by the Supreme Court was denied March 29, 2000.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constition.