Filed 7/21/16  Pointe SDMU LP v. County of San Diego CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| POINTE SDMU LP et al., | D066888 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00090197-CU-EI-CTL) |
| COUNTY OF SAN DIEGO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

Rockwood & Noziska, C. Brant Noziska; Dentons US and Charles A. Bird for Plaintiffs and Appellants.

Thomas E. Montgomery, County Counsel, and Thomas Deák, Senior Deputy County Counsel, for Defendant and Respondent.

Plaintiffs Pointe SDMU LP, Gosnell Builders Corporation of California, Lakeview Homes at the Pointe, LLC (Lakeview), and The Pointe Mountaintop Homes, LLC (Mountaintop) (together Plaintiffs) appeal a judgment denying their action against

defendant County of San Diego (County) alleging causes of action for inverse condemnation.[1]  On appeal, Lakeview contends the trial court erred by denying its inverse condemnation cause of action because County unlawfully took $261,888 from it, without its valid consent, to pay for off-site street improvements not included in County's original approval of its real property development.  Mountaintop contends the court erred by denying its inverse condemnation cause of action because County unconstitutionally conditioned, without its valid consent, the issuance of building permits for Mountaintop's real property development on completion of off-site street improvements by another party.  As we explain below, we conclude the court in a bench trial correctly denied Lakeview's and Mountaintop's causes of action for inverse condemnation.

FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the proposed real property development of San Diego County Tract No. 4828 in Spring Valley (Project), which was to include a resort, golf course, commercial uses, and about 900 housing units.  In 1990, County approved Tentative Map No. 4828 for the Project, subject to conditions including that the developers of the Project, Pointe San Diego Residential Community LP (PSDRC) and Pointe Communities of San Diego, Inc. (PCSD) (separately or together Developer), make certain improvements to Jamacha Boulevard to accommodate the additional traffic that

_____

1      Pointe SDMU LP and Gosnell Builders Corporation of California have not asserted on appeal any error by the trial court and therefore have, in effect, abandoned their appeals of the judgment.  Accordingly, our opinion addresses only Lakeview's and Mountaintop's contentions on appeal.

2

would be generated by the Project. That condition was incorporated into a 1992 improvement agreement (1992 Agreement), pursuant to which Developer provided a performance bond guaranteeing performance of the work. However, because the improvements were not completed as required by the 1992 Agreement, in 2001 County made a claim on the performance bond and demanded that the surety complete the required improvements.

In 2002, County, Developer, and the surety entered into a tri-party agreement (2002 Agreement), pursuant to which the surety agreed to deposit money with County to finance improvements per modified plans to be resubmitted by Developer and approved by County because of changes in circumstances since the 1992 Agreement. The modified improvements are referred to by the parties as the "CG 4476" improvements. In 2006, County and Developer entered into a two-party agreement (2006 Agreement), pursuant to which Developer agreed to cover the subsequent shortfall in funding for the CG 4476 improvements by making payments to County as units of the Lakeview project were sold. Developer thereafter made payments totaling about $261,888 pursuant to the 2006 Agreement.

In April 2007, Developer's contractor stopped work on the CG 4476 improvements. In May, County notified Developer that because it was not in compliance with the 2006 Agreement, County would withhold rough grade and subsequent building permits for future Project home construction until adequate progress was made to construct the CG 4476 improvements.

By the end of 2007, Lakeview had completed construction of, and sold, about 44 units and Mountaintop had partially completed construction of 24 units. In 2009, Mountaintop lost its property in foreclosure at a trustee's sale.

Plaintiffs filed the instant action against County, alleging 20 causes of action. Lakeview and Mountaintop each alleged a cause of action for inverse condemnation. They alleged that County imposed unconstitutional conditions on the development of their properties (e.g., it made the issuance of building permits conditional on Developer's performance of the 2002 Agreement) that resulted in unconstitutional takings of their property. They alleged they were entities separate and distinct from Developer.

In a bifurcated bench trial, the trial court first found in favor of County on its statute of limitations defenses as to all causes of action, except for the inverse condemnation and promissory estoppel causes of action. The court then received evidence on County's alleged liability on the remaining causes of action and ultimately found in favor of County on those causes of action. The court issued a final statement of decision setting forth its findings of fact and conclusions of law on all of the causes of action. Thereafter, it entered judgment in favor of County. It denied Plaintiffs' motions to set aside and vacate the judgment. Plaintiffs timely filed a notice of appeal.

## DISCUSSION

### I

#### *Inverse Condemnation Generally*

*Takings clauses*. The United States and California Constitutions guarantee real property owners just compensation when their land is "taken" for a public use. (U.S.

4

Const., 5th Amend.; Cal. Const., art. I, § 19; *Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528, 537; *Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 773.) "The Fifth Amendment's takings clause, made applicable to the states through the Fourteenth Amendment, does not prohibit the taking of private property.  Rather, it places a condition—payment of just compensation—on the exercise of that power."  (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 259.)  California's takings clause is construed congruently with the Fifth Amendment's takings clause.  (*Shaw,* at p. 260; *California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 456-457, fn. 10 (*California Building*).)

The constitutional "taking" clause authorizes both eminent domain proceedings instituted by public entities to directly acquire private property and inverse condemnation actions instituted by real property owners to obtain compensation for alleged takings of their private property for public use.  (*D & M Financial Corp. v. City of Long Beach* (2006) 136 Cal.App.4th 165, 175-176; *Barthelemy v. Orange County Flood Control Dist.* (1998) 65 Cal.App.4th 558, 563-564.)  "An inverse condemnation action is the equivalent of an eminent domain proceeding, except that the plaintiff is the property owner, not the condemnor."  (*D & M Financial Corp.*, at p. 176.)

"Inverse condemnation actions provide a vehicle for property owners to obtain 'just compensation.' "  (*Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 516.)  "[I]n an inverse condemnation action, the property owner must first clear the hurdle of establishing that the public entity has, in fact, taken [or damaged] his or her property before he or she can reach the issue of 'just compensation.' "  (*Beaty v.*

5

*Imperial Irrigation Dist.* (1986) 186 Cal.App.3d 897, 903, cited with approval in *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 940.)

"The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." (*Lingle v. Chevron U.S.A., Inc.*, *supra*, 544 U.S. at p. 537.) In addition, a government regulation of private property may be so onerous that its effect is tantamount to a direct appropriation of property and constitutes a "regulatory taking" compensable under the Fifth Amendment. (*Lingle,* at p. 537.) Importantly, as alleged in this case, another type of inverse condemnation cause of action is the taking of private property under the "unconstitutional conditions doctrine" as set forth in *Nollan v. California Coastal Commission* (1987) 483 U.S. 825 and *Dolan v. City of Tigard* (1994) 512 U.S. 374.

"As a general matter, the unconstitutional conditions doctrine imposes special restrictions upon the government's otherwise broad authority to condition the grant of a privilege or benefit when a proposed condition requires the individual to give up or refrain from exercising a constitutional right. [Citations.] In the takings context, the special limitations imposed by the unconstitutional conditions doctrine . . . derive from [*Nollan*] and [*Dolan*]." (*California Building*, *supra*, 61 Cal.4th at p. 457.) *Nollan* and *Dolan* "explain[ed] and describe[d] the nature and extent of the special scrutiny that is called for under the takings clause when the government conditions the grant of a land use permit on the property owner's agreement to dedicate a portion of its property for public use without the payment of just compensation. Under *Nollan* and *Dolan*, the government may impose such a condition only when the government demonstrates that

6

there is an 'essential nexus' and 'rough proportionality' between the required dedication and the projected impact of the proposed land use." (*California Building*, at p. 458.)

In *Koontz v. St. Johns River Water Mgmt. Dist.* (2013) 570 U.S. ___ [186 L.Ed.2d 697, 133 S.Ct. 2586] (*Koontz*), the United States Supreme Court held that "the *Nollan/Dolan* test applies not only when the government conditions approval of a land use permit on the property owner's dedication of a portion of the property for public use but also when it conditions approval of such a permit upon the owner's payment of money [i.e., a monetary exaction]." (*California Building*, *supra*, 61 Cal.4th at p. 458.) *Koontz* concluded those "so-called 'monetary exactions' must satisfy the nexus and rough proportionality requirements of *Nollan* and *Dolan*." (*Koontz*, at p. ___ [133 S.Ct. at p. 2599].) *Koontz* explained: "A predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing." (*Id*. at p. ___ [133 S.Ct. at p. 2598].) Alternatively stated, "the condition is one that would have constituted a taking of property without just compensation if it were imposed by the government on a property owner outside of the permit process." (*California Building*, at p. 460.) "It is the governmental requirement that the property owner convey some identifiable property interest that constitutes a so-called 'exaction' under the takings clause and that brings the unconstitutional conditions doctrine into play." (*Id*. at p. 460.)

*Standard of review*. It is a mixed question of law and fact whether a government entity's action constitutes a "taking" of private property for public use. (*Shaw v. County of Santa Cruz*, *supra*, 170 Cal.App.4th at p. 269.) "Mixed questions of law and fact

7

involve three steps: (1) the determination of the historical facts—what happened; (2) selection of the applicable legal principles; and (3) application of those legal principles to the facts. The first step involves factual questions exclusively for the trial court to determine; these are subject to substantial evidence review; the appellate court must view the evidence in the light most favorable to the judgment and the findings, express or implied, of the trial court." (*Ali v. City of Los Angeles* (1999) 77 Cal.App.4th 246, 250.) On appeal, we apply the substantial evidence standard of review to the first step and the de novo standard of review to the questions of law involved in the second and third steps. (*Shaw*, at p. 270.)

## II

### *Lakeview's Takings Claim*

Lakeview contends the trial court erred by denying its inverse condemnation cause of action because County unlawfully took $261,888 from it, without its valid consent, to pay for off-site street improvements not included in County's original approval of its real property development. However, Lakeview does not challenge any of the factual findings made by the trial court, stating its "appeal does not tread on any factual issues." Lakeview also argues the trial court's statement of decision "simply does not speak to the issues of this appeal, except in general legal analysis."

A plaintiff in an inverse condemnation action must first show that his or her private property has, in fact, been *taken* for public use. (*Beaty v. Imperial Irrigation Dist.*, *supra*, 186 Cal.App.3d at p. 903; *San Diego Gas & Electric Co. v. Superior Court*, *supra*, 13 Cal.4th at p. 940.) Absent that showing, there can be no inverse condemnation

8

finding. In this case, after considering the evidence admitted at trial, the trial court expressly found that County did *not* take any money or other property *from Lakeview*. Although payments were made pursuant to the 2006 Agreement, the court found "[t]hese payments were the obligation of [Developer], defined in the [2006 Agreement] as the 'Owner.' " The court further found the 2006 Agreement "did not require that the payments from [Developer] be made from Lakeview's escrow accounts and there was no evidence that the County directed [Developer] to make payments in this manner." It implicitly found the payments ultimately were paid from those escrow accounts because Developer and Lakeview had common management that had the power to direct payment of the 2006 Agreement amounts from the escrow account(s) for sales of Lakeview units.

Although Lakeview does not challenge that factual finding by the trial court, we nevertheless conclude there is substantial evidence to support its finding that County did not take any money from Lakeview. John Williams, a member of the executive committee that managed Developer and the other Pointe entities, testified at trial that the 2006 Agreement required the "Owner" to make the payments. Developer, not Lakeview, is defined as the "Owner" in the 2006 Agreement. Developer made payments totaling about $261,888 pursuant to the 2006 Agreement. To the extent County "took" money pursuant to the 2006 Agreement, it did so from Developer and not Lakeview. *Anheuser-Busch, Inc. v. Starley* (1946) 28 Cal.2d 347 and *Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, cited by Lakeview, are factually and legally inapposite to this case and do not persuade us to reach a contrary conclusion. Because Lakeview did not show County took money (or other property) from it for public uses, the trial court correctly

9

concluded Lakeview could not establish a cause of action for inverse condemnation against County.

Although Lakeview argues it could not have validly consented to County's taking of $261,888 from it because the 2002 Agreement and 2006 Agreement were illegal and unlawful and therefore void or otherwise unenforceable as to Lakeview, the issue of Lakeview's consent to a taking is irrelevant because we concluded above the trial court correctly found no such taking occurred.  Accordingly, we need not, and do not, address that argument.  We likewise need not, and do not, address the question of whether, as Lakeview argues, our decision in *County of San Diego v. Pointe Communities of San Diego, Inc.* (Jan. 28, 2014, D063074) [nonpub. opn.] has a collateral estoppel effect on the issue of the validity of Lakeview's consent or otherwise.[2]  Finally, Lakeview suggests in its reply brief that if it was not the proper party to allege an inverse condemnation cause of action against County, we should direct the trial court to consider the substitution of parties as it deems just.  We are not persuaded by Lakeview's argument and decline to do so, especially at this late stage of the case.

---

2      Even were we to consider whether that decision has any collateral estoppel effect, we would likely conclude Lakeview has not carried its burden to show the requirements for the application of the doctrine of collateral estoppel have been satisfied.  (See, e.g., *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [requirements for application of doctrine of collateral estoppel].)

III

*Mountaintop's Takings Claim*

Mountaintop contends the trial court erred by denying its inverse condemnation cause of action because County unconstitutionally conditioned, without its valid consent, the issuance of building permits for Mountaintop's real property development on completion (or adequate progress toward completion) of off-site street improvements by Developer.

However, we conclude Mountaintop has not shown County took any property from it under the unconstitutional conditions doctrine. The record does not support a conclusion that County conditioned the grant of building permits for Mountaintop's real property development on its dedication of a portion of its property for public use or payment of money. (*California Building*, *supra*, 61 Cal.4th at p. 457; *Koontz*, *supra*, 570 U.S. at pp. ___ -___, ___ [133 S.Ct. at pp. 2595-2599, 2603].) "It is the governmental requirement that the property owner convey some identifiable property interest that constitutes a so-called 'exaction' under the takings clause and that brings the unconstitutional conditions doctrine into play." (*California Building*, at p. 460.) Although Mountaintop argues County wrongfully conditioned issuance of building permits for its real property development on Developer's completion of certain off-site street improvements, any threatened withholding of building permits by County was *not* conditioned on *Mountaintop's* dedication of its real property or payment of money. Rather, it was conditioned on *Developer's* completion (or adequate progress toward

11

completion) of off-site street improvements.  On that ground alone, Mountaintop cannot establish a cause of action against County for inverse condemnation.

In any event, as the trial court found, Mountaintop did not, in fact, convey to County any property interest, either monetary or in real property.  The court found: "There was no evidence presented that any property was taken from Mountaintop, either in the form of an easement or other interest in real property owned by Mountaintop, or in the form of a 'monetary' payment made by Mountaintop. . . .  There is no compensable taking."  Because Mountaintop, like Lakeview, does not dispute the trial court's factual findings, the court's finding there was no taking of Mountaintop's property also disposes of its contention on appeal.  *Koontz* stated: "Where the permit is denied and the condition is never imposed, nothing has been taken. . . .  [T]he Fifth Amendment mandates a particular remedy—just compensation—only for takings." (*Koontz*, *supra*, 570 U.S. at p. ___ [133 S.Ct. at p. 2597].)  Therefore, assuming arguendo County conditioned its issuance of building permits on a demand of property from Mountaintop, there could not be a taking under the Fifth Amendment unless Mountaintop actually conveyed an interest in its property or paid money to County. (*Ibid.*)  Because there is no evidence in the record showing Mountaintop conveyed an interest in its property or paid money to County because of that purported condition, it has no takings claim under the unconstitutional conditions doctrine.  Rather, to the extent Mountaintop believed County wrongfully denied, or threatened to deny, issuance of building permits for Mountaintop's real property development, it could have sought other relief to remedy that alleged wrong (e.g., petition for writ of mandamus), as the trial court noted.  (See, e.g., *Selby Realty Co.*

12

*v. City of San Buenaventura* (1973) 10 Cal.3d 110, 128.)  Because Mountaintop did not show County took any property from it for public use, the trial court correctly concluded Mountaintop could not establish a cause of action for inverse condemnation against County.

Although Mountaintop argues it could not have validly consented to County's taking of property from it because the 2002 Agreement and 2006 Agreement were illegal and unlawful and therefore void or otherwise unenforceable as to Mountaintop, the issue of Mountaintop's consent to a taking is irrelevant because we concluded above the trial court correctly found no such taking occurred.  Accordingly, we need not, and do not, address that argument.  We likewise need not, and do not, address the question of whether, as Mountaintop argues, our decision in *County of San Diego v. Pointe Communities of San Diego, Inc., supra,* D063074 has a collateral estoppel effect on the issue of the validity of its consent or otherwise.

## DISPOSITION

The judgment is affirmed.  County shall recover its costs on appeal from Lakeview and Mountaintop.

McDONALD, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.

13